2 A.3d 505 (2010)
In re D.L.H., an Incapacitated Person.
Appeal of M.I.H. and V.B.H., (Guardians).
No. 98 MAP 2009.
Supreme Court of Pennsylvania.
Argued May 11, 2010.
Decided August 17, 2010.
*506 Christopher Steven Lucas, for Myrl & Vada Hockenberry.
Randall Luke Wenger, Camp Hill, H. Aden Steven, Matthew S. Bowman, for Amicus Curiae Pa. Family Institute.
Robert B. Hoffman, Eckert Seamans Cherlin & Mellott, LLC, Harrisburg, David Edwin Loder, Lisa Whitcomb Clark, *507 Duane Morris, L.L.P., Philadelphia, for Amicus Curiae PA Medical Society & The Hospital and Healthsystem Assoc. of PA.
Howard C. Ulan, Harrisburg, for Ebensburg Center.
Jane Adams, Jane Adams Attorney at Law, Carlisle, for David Hockenberry.
James Clark Munro, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, for Memorial Hospital.
Mark J. Murphy, Pittsburgh, Robin Resnick, Shari Ann Mamas, Disability Rights Network of PA, for Appellee Amicus Curiae Disability Rights Network of PA.
BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

OPINION
Justice SAYLOR.
In this appeal, we consider whether plenary guardians can refuse life-preserving medical treatment on behalf of a person who lacksand has always lackedthe capacity to make personal healthcare decisions, where the person is neither suffering from an end-stage medical condition nor permanently unconscious.
D.L.H. ("David"), age 53, has suffered from profound mental retardation since birth and has resided at the Ebensburg Center, a Department of Public Welfare ("DPW") facility, for nearly his entire life. He is an incapacitated person under the guardianship provisions of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. §§ 5501-5555. See id. § 5501 (delineating the meaning of "incapacitated person"). In 2002, Appellants, David's parents, were duly appointed his plenary guardians under such authority. See id. § 5512.1(c).
In 2007, David became ill with aspiration pneumonia and was transferred from the Ebensburg Center to a local hospital. There, treating physicians determined that his condition required that he be placed on a mechanical ventilator. Appellants attempted to decline that treatment on his behalf, asserting that mechanical ventilation was not in his best interest. See generally id. § 5521(a) ("It shall be the duty of the guardian of the person to assert the rights and best interests of the incapacitated person."). The hospital denied that request, however, and David remained on a ventilator for several weeks. Subsequently, his condition improved to the point where he no longer required this treatment.
In light of the dispute over David's medical care, Appellants petitioned the orphans' court to be appointed his "health care agents" for purposes of the Health Care Agents and Representatives Act.[1] The Act is part of a larger statutory scheme recognizing a qualified right of individuals to make decisions related to their own health care, see id. § 5423(c)(1), and establishing a framework for substitute health care decision-making for persons who are "incompetent" to do so.[2] The mechanics include the use of "advance health care directives," such as "health *508 care powers of attorney," as well the potential involvement of "health care representatives," where no previous agency relationship has been established. Id. §§ 5422, 5456, 5461.
A "health care agent," designated by an advance health care directive, normally has the same authority as a competent principal to make health care decisions concerning the principal's care with no requirement of court approval. See id. § 5456(a), 5454(e).[3] Additionally, and of central relevance to the present appeal, Section 5462(c)(1) of the Act imposes an affirmative duty of care on attending physicians and health care providers, as follows:
Health care necessary to preserve life shall be provided to an individual who has neither an end-stage medical condition nor is permanently unconscious, except if the individual is competent and objects to such care or a health care agent objects on behalf of the principal if authorized to do so by the health care power of attorney or living will.
20 Pa.C.S. § 5462(c)(1).
In their petition seeking the status of health care agents, Appellants took the position that the Act "does nothing more than codify the Supreme Court's rule [derived from In re Fiori, 543 Pa. 592, 673 A.2d 905 (1996) ] that parents may exercise exactly the kind of judgment that [Appellants] seek to exercise here." Petition at 3 ¶ 14. See generally 20 Pa.C.S. § 5423(a) ("Nothing in this chapter is intended to... affect or supersede the holdings of In re Fiori [.]"). Furthermore, they relied on their broad powers as plenary guardians for David.
DPW opposed the petition, and the orphans' court appointed counsel for David. Despite the technical mootness of the issues raised in Appellants' petition, the court decided to resolve the matter, evidently reasoning that the case fell within an exception to the mootness doctrine. A hearing was scheduled; however, the facts as related above were agreed, and the parties merely advanced their legal positions.
Appellants maintained the position that, although David had been incapacitated since birth, he retained the inherent right to make medical decisions under Fiori including the right to refuse life-preserving treatmentand such right extended to them as his plenary guardians. In response, David's counsel expressed concern that a guardian's decision-making should be consistent with the medical recommendations where the life of the incapacitated person is at stake.
DPW offered a more concrete legal position, namely, that Section 5462(c)(1) of the Act requires caregivers to take medical measures necessary to preserve life on behalf of an incompetent person, where such a person does not suffer from an end-stage condition or permanent unconsciousness. According to DPW, Section 5462(c)(1) allows for a single exception, entailing displacement of the caregivers' obligation to provide treatment by the decision of a health care agent, i.e., "[a]n individual designated by a principal in an advance health care directive." 20 Pa.C.S. § 5422; see also id. § 5452 (governing the *509 execution of health care powers of attorney). Since David was never competent to so provide, this procedure was unavailable on the governing terms of the statute. DPW acknowledged that this Court's Fiori decision, as invoked by Appellants, does in fact vindicate the right of incompetent personsin some situationsto make medical decisions via a surrogate. However, DPW highlighted that the decision was closely and carefully limited by the Court to circumstances in which the incompetent person is in a permanent vegetative state. See Fiori, 543 Pa. at 608, 673 A.2d at 913 ("[W]e stress that the matter sub judice addresses only a very narrow issue....").
Upon its review, the orphans' court denied Appellants' petition, essentially adopting DPW's position that
For the medical circumstances present here, the General Assembly adopted, in [the Act], a per se rule, 20 Pa.C.S. § 5462(c)(1), that simply removes the life or death decision from guardians, relatives, or health care representatives (who are notunlike health care agentschosen by the principal). According to the General Assembly, in these particular medical circumstances, life is to be chosen over death.
* * *
The relief the guardians specifically seekto transform guardianship into health care agen[cy]imputes to this Court a power the legislature has withheld from it, i.e., the power to create health care agency (see "health care agent," 20 Pa.C.S. § 5422) when none has previously existed. Under [the Act], guardians can "revoke or amend" an existing health care agency if the principal becomes incompetent, 20 Pa.C.S. § 5460(a), but they cannot create one where none ever existed, which is the case here.
In re D.L.H., No. 21-02-293, slip op. at 3, 6 (C.P.Cumberland, Jan. 24, 2008) (per Hon. Edgar B. Bayley) (quoting DPW's brief) (emphasis in original and footnote omitted). The court also credited DPW's position that the authority provided a close family member in Fiori is limited to a situation in which the incompetent person is permanently unconscious. See id. at 5.
Appellants appealed to the Superior Court, which affirmed in a published opinion, albeit on different grounds. See In re D.L.H., 967 A.2d 971 (Pa.Super.2009). Initially, as to the mootness doctrine, the court invoked the great-public-importance and capable-of-repetition-yet-evading-review exceptions. See Fiori, 543 Pa. at 600 n. 4, 673 A.2d at 909 n. 4.
On the merits, the intermediate court indicated that the Act was inapplicable to David, since, on account of his lifelong incapacity, he could not comply with its terms for refusing life-preserving treatment or appointing a healthcare agent. See D.L.H., 967 A.2d at 981 n. 4 (quoting 20 Pa.C.S. § 5423(a) (evincing the legislative intent that "[t]his chapter provides a statutory means for competent adults to control their health care through instructions written in advance or by health care agents or health care representatives and requested orders.")). Moreover, the court agreed with DPW that Fiori was inapplicable, given that David's life-threatening medical condition was temporary. See id. at 986-87.
In spite of these conclusions, the Superior Court did not accept DPW's core position that the Act's Section 5462(c)(1) imposes a per se requirement on health care providers to provide treatment in the absence of an end-stage condition, permanent unconsciousness, or a decision by a health care agent relieving providers of their obligation. Rather, the court envisioned a residual power in plenary guardians to supersede *510 that duty, subject to court approval. See id. at 981 n. 4 (explaining that the Act and the authority of a health care agent "informs our understanding of the extent to which a guardian possesses `plenary' power."); see also id. at 982-87. In terms of the role of the orphans' court, the intermediate appellate court also expressed a concern that abuses could occur on implementation of a more liberal approach to the role of a plenary guardian in the administration of life-preserving care. See id. at 981-82 ("Such a statutory construction would lead to an unreasonable outcome in that a guardian, under the guise of claiming the incompetent's best interest, could terminate the life of the incompetent whenever he/she deems fit and without first seeking judicial approval.").[4] The Superior Court also invoked the concept of parens patriae to justify court involvement and drew support from In re Terwilliger, 304 Pa.Super. 553, 560, 450 A.2d 1376, 1380 (1982) ("[P]rior judicial approval is required before a guardian may consent to administering or withholding of proposed extraordinary medical treatment.") (quoting In re Moe, 385 Mass. 555, 432 N.E.2d 712, 716 (1982)). Additionally, the court expressed a concern with protecting the ethical integrity of the medical community. See D.L.H., 967 A.2d at 986.
The Superior Court concluded that, before an orphans' court could empower a guardian to decline life-preserving treatment for an incapacitated person, the guardian would first have to petition the court for the right to do so, and then proveby clear and convincing evidence that death is in the incompetent's best interest. See id. at 983. When applying this standard to the present case, the court concluded that the evidence was inadequate to establish, clearly and convincingly, that refusing mechanical ventilation was in David's best interest, particularly since Appellants offered no medical proof that his aspiration pneumonia was a severe, permanent medical condition. See id. at 984-85.
We accepted discretionary review on Appellant's petition, framing the question presented as follows:
Whether plenary guardians have the authority to decline potentially life-sustaining treatment for a lifelong incapacitated person who is not suffering from an end-stage medical illness or is in a permanent vegetative state.
In re Hockenberry, 603 Pa. 431, 984 A.2d 935 (2009) (per curiam). The parties have pointed out that there is some imprecision in this framing of the issue, given that the Act contains a particular definition for "life-sustaining treatment," centered on end-stage and permanent unconsciousness scenarios. See 20 Pa.C.S. § 5422. Thus, we take this opportunity to conform the question presented to our statement above ("[W]e consider whether plenary guardians can refuse life-preserving medical treatment on behalf of a person who lacksand has always lackedthe capacity to make personal healthcare decisions, where the person is neither suffering from an end-stage medical condition nor permanently unconscious.").
Presently, Appellants open their argument with a strong focus on the guardianship provisions of the Probate, Estates and Fiduciaries Code, emphasizing that they are invested with the duty to assert David's rights and best interests. See id. § 5521(a). Further, they observe that the guardianship statute contains a specific list *511 of excluded medical decisions, which does not include mechanical ventilation. In this regard, Appellants refer to certain powers and duties reserved expressly for the orphans' court, see id. § 5521(d), and other specific limitations on a guardian's powers, as follows:

(f) Powers and duties not granted to guardian.The court may not grant to a guardian powers controlled by other statute, including, but not limited to, the power:
(1) To admit the incapacitated person to an inpatient psychiatric facility or State center for the mentally retarded.
(2) To consent, on behalf of the incapacitated person, to the relinquishment of the person's parental rights.
20 Pa.C.S. § 5521(f). Thus, Appellants argue that, as David's plenary guardians, they are the appropriate legal surrogates empowered to vindicate his right to decline medical intervention, even where such treatment would be necessary to preserve David's life. See Brief for Appellants at 9 ("[A]ll other powers not reserved for the Orphans Court under sections 5521(d) and (f) should be presumed to be granted under section 5521(a).").
Appellants further contend that the Superior Court erred in adopting Terwilliger's "extraordinary medical treatment" standard, as it was derived from dicta, and, in any event, was superseded by the noted provisions of the guardianship statute.[5] Appellants apparently maintain that, to the extent that the Terwilliger standard remains extant, this Court should reject it, as it is unworkable.[6]
Appellants finally maintain that, when reading the guardianship statute in pari materia with the Act, it is apparent that the Legislature intended for the power of a guardian to be superior to that of a health care agent. In this regard, Appellants rely on a provision of the Act providing for the accountability of a health care agent to a guardian, and empowering guardians to amend or revoke the agency. See 20 Pa.C.S. § 5460(a). Therefore, Appellants assert that Section 5462(c)(1) must be read to mandate "life [preserving] treatments in cases where an appropriate surrogate has not been designated in accordance with the terms of [the Act] or other law," such as the guardianship statute. Brief for Appellants at 12 (emphasis removed). Appellants argue that a contrary interpretation would thwart that provision's purpose, which is to permit surrogate decision-making when an individual lacks capacity. According to Appellants,
By reading section 5462(c)(1) without considering other provisions of the law, such as sections 5460, 5511 and 5521 of the guardianship statute, DPW successfully urged the Orphans Court to apply section 5462(c)(1) in a way that causes David to forfeit any right to ever control when, where, how and how many times he is forced to submit to a wide range of *512 medical treatments, because of his life-long lack of capacity. This erroneous construction raises profound questions regarding the right of incapacitated individuals to exercise the same right to decline medical procedures that is enjoyed by other citizens.
Id. at 13 (citing Fiori, 543 Pa. at 601, 673 A.2d at 910).
David and DPW, acting through the Ebensburg Center, (collectively, "Appellees") filed a joint brief relying on DPW's core position as developed above. They seek affirmance of the Superior Court's order, but preferably under the protective, per se rule of Section 5462(c)(1) as interpreted in the orphans' court's decision. Specifically, Appellees maintain that, where an incompetent person who has no health care agent suffers from a life-threatening but treatable medical condition, life-preserving medical care must be provided. It is Appellees' position that, under Section 5462(c)(1), no consent from any third party is required, and no objection by a guardian or health care representative can be honored. See, e.g., Brief for Appellees at 10 ("By identifying only competent patients or health care agents as empowered to object to life-preserving treatment in the specified circumstances, § 5462(c)(1)'s exclusion of guardians cannot be doubted."). Appellees also draw support from related provisions of Chapter 54. See, e.g., 20 Pa.C.S. § 5423(a)(3) ("Nothing in this chapter is intended to... permit any ... omission to end life other than as defined in this chapter."), (c)(1) (couching the right of individuals to make decisions relating to their own health care as a "qualified" one).
Appellees challenge Appellants' contention that the guardianship statute provides authority, in and of itself, for plenary guardians to decline life-preserving treatment on behalf of an incompetent. Appellees explain that the powers withheld from a guardian are not limited to those specifically enumerated in Sections 5521(d) and (f), as Appellants assert. Rather, Section 5521(f) expressly provides that "[t]he court may not grant to a guardian powers controlled by other statute, including, but not limited to," those specifically identified in the statute and portrayed by Appellants as the exclusive restrictions. Id. § 5521(f) (emphasis added). Appellees also observe that, because the Act was implemented fourteen years after the guardianship statute, the latter obviously could not have accounted for the former. Therefore, Appellees maintain, a court cannot convert a guardian into a health care agent. Moreover, Appellees refute any contention that the Legislature overlooked guardianship interests in drafting Section 5462(c)(1), in view of the Act's multiple references to guardians and explicit delineation of the relationship between health care agents and guardians, see id. § 5460(a) (providing for the accountability of a health care agent to a guardian).
As concerns the Superior Court's decision, Appellees specifically take issue with its holding that the Act simply does not apply to persons who have always lacked competence. In this regard, Appellees argue that the Superior Court incorrectly treated a stated purpose of Chapter 54 to provide a means for competent adults to control their health care through advance health care directives or health care representatives, see id. § 5423(a)as the chapter's only aim. Appellees explain that the Act also explicitly provides for default surrogates not chosen by the principal, namely, health care representatives, without differentiating between persons who have always lacked competence and those who have lost their previous capacity to make medical decisions. See id. § 5461; supra note 3. Moreover, Appellees highlight *513 that no explanation has been offered "why the General Assembly would value the life of a once-competent person over that of a never-competent person." Brief for Appellees at 6 n.4.
Appellees posit that, in light of the plain language of Section 5462(c)(1), it is unnecessary to speculate as to the General Assembly's underlying intent. Nevertheless, they offer that the Legislature may have been focused on the specific involvement of the principal in creating and shaping the relationship in the agency situation, as contrasted with a guardianship scenario, in which the principal has no such opportunity. Additionally, Appellees believe, as do a number of their amici, that the statute reflects the concern that guardians do not always act in the best interest of incapacitated persons, despite their charge to do so. See, e.g., Clark v. Cohen, 613 F.Supp. 684, 699 (E.D.Pa.1985), aff'd, 794 F.2d 79 (3d Cir.1986). See generally Brief for Appellees at 16 ("[T]he legislature concluded that case-by-case determinations based on `quality of life' considerationswhether made by guardians or by courts of common pleaswould too often be wrongly decided, decided against life."). According to Appellees, any doubt as to whether a major goal of Section 5462(c)(1) was to protect disabled persons from such discrimination is eliminated by Section 5462(c)(2), which references the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. See 20 Pa.C.S. § 5462(c)(2).[7]
Finally, citing Cruzan v. Director, Missouri Department of Health, 497 U.S. 261, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990), Appellees develop that a state may properly assert an unqualified interest in the preservation of human life to be weighed against the constitutionally protected interests of the individual. See id. at 282, 110 S.Ct. at 2853. Although Appellees highlight that no constitutional issues have been raised here, they believe that aspects of the Cruzan decision are illuminating.[8]
The issue before us is one of statutory interpretation; it is therefore a question of law subject to plenary review by this Court to be conducted de novo. As neither party challenges the Superior Court's determination that the appeal falls within exceptions to the mootness doctrine, we decline to exercise our discretion to review that finding and proceed on that premise. Cf. Rendell v. Pa. State Ethics Comm'n, 603 Pa. 292, 309, 983 A.2d 708, 718 (2009).
In statutory interpretation, our task is to discern the intent of the Legislature, and the foremost indication of legislative intent is the plain language of the statute. See 1 Pa.C.S. § 1921(a)-(b); see, e.g., In re Erie Golf Course, ___ Pa. ___, ___, 992 A.2d 75, 85 (2010). Here, as Appellees amply develop, and as the orphans' court determined, Section 5462(c)(1) explicitly limits the category of persons empowered to refuse life-preserving medical treatment on behalf of an incompetent person who is not faced with an end-stage *514 condition or permanent unconsciousness to health care agents. See 20 Pa.C.S. § 5462(c)(1). Although the Act provides certain powers to guardians and health care representatives, see, e.g., id. §§ 5460(b), 5461(c), it does not explicitly authorize either surrogate to object to life-preserving care under Section 5462(c)(1) in the noted circumstances. Cf. 1 Pa.C.S. § 1924 ("Exceptions expressed in a statute shall be construed to exclude all others.").
Chapter 54 reflects a careful legislative effort to balance various rights and interests in the sensitive arena of personal medical care provided to one who is not competent to assert his or her own rights. On the one hand, the statute manifests respect for advance health care directives, as well as the decisions of close relatives and friends, where the incompetent person suffers from an end-stage condition or permanent unconsciousness, and enables health care providers to comply with such decisions. See, e.g., 20 Pa.C.S. §§ 5423(a)(1), 5423(c)(4), 5426, 5431, 5456, 5462(c). The enactment, on the other hand, more sharply regulates the situation in which the incompetent person suffers from a life-threatening but treatable condition, obviously reflecting the Legislature's assertion of a policy position of greater state involvement to preserve life in such circumstances. As Appellees develop, Section 5462(c)(1) does allow for life-preserving medical treatment to be refused in such instances, but only by a health care agent (or the principal should he or she regain the capacity to make health care decisions). Moreover, since a health care agent can only be designated by a competent principal, see id. § 5452(a) ("An individual of sound mind may make a health care power of attorney ..."), we also agree with Appellees and the orphans' court that such refusal is unavailable in the case of one who has never been competent to delegate the act of personal medical decision-making in the first instance.
Also in line with Appellees' arguments and the orphans' court's decision, and for the reasons they have advanced, we agree that the guardianship statute does not alter this regime. Section 5521(d) and (f) of the Probate, Estates and Fiduciaries Code, by their own terms, do not provide the exclusive list of unauthorized acts for guardians. Rather, the proscription expressly subsumes acts forbidden of guardians under other statutes, such as Section 5462(c)(1). See id. § 5521(f).
We also agree that the Superior Court adopted too limited a perspective concerning the Act's scope. While the Act clearly reflects the express policy of empowering competent adults to effectuate advance health care directives, the provision for health care representation even in the absence of such directives, see id. § 5461, clearly conveys that the statute advances other purposes as well. Accordingly, we are unable to disregard the limitations inherent in Section 5462(c)(1)'s clearly-worded exception to the general requirement for treatment for life-threatening but curable medical conditions.[9]
*515 With regard to Appellants' argument that the accountability provision of the Act demonstrates a legislative intent to afford guardians powers at least coextensive with the health care agent, since that section subordinates a health care agent's decision-making authority to that of a guardian, see id. § 5460(a), we disagree. Section 5460(a) can readily be construed as providing an additional layer of protection to incompetent persons, as a health care agent may be deprived of the power to make life-ending decisions by a guardian. Moreover, although the statute expressly affords a guardian the ability to "revoke" or "amend" the appointment of a health care agent, see id., it does not confer the power to appoint such an agent in the first instance. This dovetails with the plain-meaning interpretation of the overall enactment reflected in Appellees' arguments and the orphans' court's decisionthe Act simply does not allow for the refusal of life-preserving care to one who has never had the ability to appoint a health care agent and does not suffer from an end-stage condition or permanent unconsciousness.
We recognize Appellants' concern with the possibility that David may face additional medical interventions which they may quite reasonably regard as painful and intrusive. Further, we make no policy-oriented criticism of the position Appellants have taken, which we have no doubt reflects deeply held beliefs arising out of their personal experience with David's profound disability and ongoing medical needs. We find only that the salient policy decision has been made by the Legislature, in Section 5462(c)(1) of the Act, as is its prerogative as the policy-setting branch. See Program Admin. Servs., Inc. v. Dauphin County Gen. Auth., 593 Pa. 184, 192, 928 A.2d 1013, 1017-18 (2007). In the absence of meritorious arguments grounded in the Constitution, the courts are bound to enforce the statutory qualifications on David's right to control his treatment as exercised by his guardians.
We hold that where, as here, life-preserving treatment is at issue for an incompetent person who is not suffering from an end-stage condition or permanent unconsciousness, and that person has no health care agent, the Act mandates that the care must be provided.[10]
The order of the Superior Court is affirmed, albeit we have disapproved a portion of its reasoning. Jurisdiction is relinquished.
Chief Justice CASTILLE, Justices EAKIN, BAER, TODD, McCAFFERY and ORIE MELVIN join the opinion.
NOTES
[1] Act of Nov. 29, 2006, P.L. 1484, No. 169 § 4 (as amended 20 Pa.C.S. §§ 5451-5471) ("the Act"). The Act is reposed in a subchapter of Chapter 54 of the Probate, Estates and Fiduciaries Code, entitled "Health Care," and the Chapter 54 definitions, see id. § 5422, and legislative findings and intent, see id. § 5423, pertain.
[2] The Chapter 54 definition of "incompetent," see 20 Pa.C.S. § 5422, overlaps substantially with the guardianship scheme's definition of "incapacitated," see id. § 5501. If there is a difference, it is not material to the resolution of this appeal, and it is undisputed that David is both an incompetent and incapacitated person for purposes of the respective enactments.
[3] According to an amicus, "health care representatives," who may be family members or other individuals who know the incompetent person, see 20 Pa.C.S. § 5461(d), act as surrogate decision-makers of last resort. In any event, the concept is not directly relevant here, since a "health care representative," as understood through the Act, may make a health care decision only where a guardian with the general power to make such decisions has not been appointed. See id. § 5461(a)(3).
[4] The Superior Court also determined that this interpretation was consistent with the common law distinction between an agent and a guardian, and that its conclusion was compelled by practical considerations. See D.L.H., 967 A.2d at 981-82.
[5] See Brief for Appellants at 9 ("[T]he Legislature, in essence, specifically and expressly defined `extraordinary medical treatments' in sections 5521(d) and (f). Because the Legislature did not include the discretion to control... mechanical ventilation in the list of excluded duties of guardians, [Appellants] were within their authority to exercise this control on David's behalf.").
[6] See, e.g., Brief for Appellants at 8 ("Without a clear definition of [the] phrase ["extraordinary medical treatment",] the health care system will establish a `safety zone' that will contribute to the erosion of the rights of incapacitated persons who will now be forced to submit to a range of procedures that, even arguably, might be `extraordinary.'"); id. at 10 ("[T]he Superior Court's parents [sic] patriae analysis goes against the modern trend and is a step backward because that procedure precludes the kind of on-the-spot decision making that cases like this call for.").
[7] Appellees also argue that, even assuming the Act is inapplicable to those who have never been competent to make personal medical decisions, the same result is reached under the common law rule. See In re Estate of Dorone, 517 Pa. 3, 9, 534 A.2d 452, 455 (1987).
[8] Also aiding our review, amicus briefs have been submitted by: Disability Rights Network of Pennsylvania, the ARC of Pennsylvania, Achieva, Vision for Equality, Liberty Resources, Inc., Pennsylvania Developmental Disabilities Council, and Not Dead Yet; the Pennsylvania Medical Society and the Hospital and Healthsystem Association of Pennsylvania; and Dr. George Isajiw, Dr. John A. Flamini, Dr. John M. Travaline, Dr. Karl Benzio, and the Pennsylvania Family Institute.
[9] To the extent that Appellants argue that applying Section 5462(c)(1) to a lifelong incompetent implicates that person's common law right to refuse medical care, this Court has held that, "[w]here the Legislature expressly provides a comprehensive legislative scheme, these provisions supersede the prior common law principles." Sternlicht v. Sternlicht, 583 Pa. 149, 163, 876 A.2d 904, 912 (2005). Thus, by virtue of that provision, which requires that life-preserving treatment must be provided to an incompetent who is not suffering from end-stage medical condition or permanent unconsciousness and has not appointed a health care agent, the Legislature has supplanted the common law right to refuse medical treatment in these instances.
[10] The Pennsylvania Medical Society and the Hospital and Healthcare Association of Pennsylvania, as amici, have submitted a brief centrally focused on their concern that the Superior Court's holding, broadly read, might unduly impinge on statutorily authorized surrogate decision-making in the end-of-life and permanent-unconsciousness scenarios. Nothing in this matter should be so read, as Appellants obviously favor broad decision-making powers on behalf of surrogates; Appellees have consistently expressly distinguished the "life-sustaining treatment" scenario as being "radically different" from that involving a life-threatening but curable condition; and thus, a "life-sustaining treatment" situation has never been before the courts in this case. See generally Commonwealth v. McCann, 503 Pa. 190, 195, 469 A.2d 126, 128 (1983) (reflecting the axiom that the holding of an opinion is to be read against the facts that are before the court).