23 A.3d 519

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Sue ZORTMAN, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 15, 2010.

Decided July 19, 2011.

Andrew Jay Shubin, State College, for Sue Zortman.

Kelley Lynn Nelson, PA Office of Attorney General, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

24

*OPINION*

Chief Justice CASTILLE.

The issue in this appeal is whether an inoperable handgun may be considered a "firearm" for purposes of mandatory minimum sentencing under 42 Pa.C.S. § 9712.1 ("Sentences for certain drug offenses committed with firearms"). The Superior Court held that the handgun involved in this case was indeed a "firearm" for purposes of sentence enhancement pursuant to Section 9712.1. For the reasons set forth below, we affirm.

On May 24, 2006, state narcotics agents went to the Clearfield County residence of appellant and her boyfriend, Robert Prisk, who had been the subject of an ongoing grand jury investigation regarding suspected drug activity. Appellant admitted the agents to the residence and consented to a search of the residence and her purse. The agents located various amounts of marijuana in separate baggies, drug paraphernalia, a bank deposit bag containing $400 cash, and a loaded Smith & Wesson .357 Magnum handgun under the mattress in the bedroom. Appellant waived her right to a preliminary hearing and was arraigned on February 7, 2007 on charges of possession of a controlled substance (marijuana), possession of a controlled substance (marijuana) with intent to deliver ("PWID"), criminal conspiracy to possess a controlled substance (marijuana) with the intent to deliver and/or delivery thereof, and possession of drug paraphernalia.[1] When Prisk was tried in July 2007, appellant testified for the defense and admitted that the drugs were hers for personal use. She also testified that the handgun was in her possession because she had talked a co-defendant of Prisk's, Allen Sheen, into leaving it with her after Sheen threatened to take it to Florida and kill his ex-wife's boyfriend. Also at Prisk's trial, one of the agents who conducted the search testified that when the

1. On the Commonwealth's motion, appellant's prosecution was initially joined with those of six other defendants, including Prisk, all of whom had been subjects of the grand jury investigation; upon motion by appellant's counsel, however, her prosecution was severed from those of the other defendants. Trial Ct. Order, 4/26/07.

handgun was tested by law enforcement personnel, it was found to lack a "firing pin" and was therefore inoperable. It is not clear from the transcript from Prisk's trial, which is part of the record in this appeal, whether the firing pin had been removed or if the gun had never had one. See N.T., Robert Prisk Trial, 7/18/07, at 44; 7/20/07, at 153, 173.

On October 3, 2007, appellant completed a written "Negotiated Plea Agreement and Guilty Plea Colloquy" form pleading guilty to all four charges stated above. The following day, the trial court accepted the plea agreement and noted the Commonwealth's intention to seek the five-year mandatory minimum sentence provided in 42 Pa.C.S. § 9712.1, which enables enhancement of sentences for certain drug offenses committed in association with firearms, as follows:

(a) **Mandatory sentence.**—Any person who is convicted of a violation of section 13(a)(30) of . . . The Controlled Substance, Drug, Device and Cosmetic Act, when at the time of the offense the person or the person's accomplice is in physical possession or control of a firearm, whether visible, concealed about the person or the person's accomplice or within the actor's or accomplice's reach or in close proximity to the controlled substance, shall likewise be sentenced to a minimum sentence of at least five years of total confinement.

Section 9712.1 was implicated because the handgun was found in close proximity to the drugs during the search. An oral plea colloquy was conducted on December 27, 2007, and arguments were heard from both sides regarding sentencing. The court applied the mandatory minimum and sentenced appellant to five years of imprisonment on the PWID charge, to be followed by three years of probation. The court stated expressly at both the proceeding and in its order that it had imposed the five-year sentence "in view of the fact that this offense involved a firearm, which carries the minimum of five years." N.T., 12/27/07, at 13; Trial Ct. Sentencing Order, 12/31/07. In post-sentence motions, appellant argued that the mandatory minimum sentence should not have been imposed upon her since, at the time of her arrest, the handgun was

26

"inoperable" due to the absence of a firing pin.[2] The Commonwealth responded that Section 9712.1 expressly adopts the definition of "firearm" in Section 9712, which governs mandatory sentences for crimes of violence committed in association with firearms. That definition reads: " 'Firearm.' Any weapon, including a starter gun, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive or the expansion of gas therein." 42 Pa.C.S. § 9712(e). According to the prosecutor, neither Section 9712 nor Section 9712.1 requires that a firearm be "functional" for the mandatory minimum sentence to be applicable. Appellant argued that Section 9712.1, unlike Section 9712(a), does not include language expressly discounting operability, so under Section 9712.1, the inoperability of the handgun here should have rendered the enhancement inapplicable. After argument, the court granted appellant's motion, vacated the initial sentence, and sentenced appellant instead to nine months of imprisonment in the Clearfield County jail, to be followed by a total of nine years of probation.

Upon appeal by the Commonwealth, the trial court filed an opinion explaining that while Section 9712.1 adopts the definition of "firearm" set forth in Section 9712, the court nevertheless believed that the legislative intent and purpose of the two sections differ enough that the analytical approach is not the same. The court stated that the "main purpose" of Section 9712, with its focus on violent crimes committed with firearms, is the visual impact upon the crime victim and the "level of fear the victim experiences during the commission of a violent crime involving a firearm." Under Section 9712, the court explained, whether the firearm itself is actually functional or even real (as opposed to a replica) is of no ultimate consequence.

By contrast, the court continued, under Section 9712.1, the functionality or "reality" of a given weapon is not squarely at

2. Appellant also argued against imposition of the mandatory minimum sentence on grounds that the gun itself was not in close proximity to the drugs, appellant, or Prisk at the time of the search and arrest. That distinct claim is not at issue in this appeal.

issue. The court also noted that Section 9712 may not apply in circumstances where a violent crime is committed but the imminent threat of violence is lessened or non-existent, such as where the weapon is concealed and not brandished; the court then reasoned that Section 9712.1, by analogy, should not apply if the underlying offense does not entail imminent violence or the threat thereof. Trial Ct. Op., 7/17/08, at 3–4 (citing *Commonwealth v. Dickson*, 591 Pa. 364, 918 A.2d 95 (2007)) (limiting application of Section 9712 (violent crimes) to "those parties . . . who visibly possess a firearm or firearm replica during the commission of the crime" and holding that statute did not extend to unarmed co-conspirators). The trial court added: "The legislature clearly expresses an intent to apply § 9712 where a firearm is not functional because the inoperable firearm is still capable of putting a victim of a violent crime in fear of harm or death but the legislature did not extend such a provision to § 9712.1, where the language is absent." Trial Ct. Op., 7/17/08, at 4.

In this case, the trial court continued, the handgun found in appellant's residence had no firing pin and was therefore "incapable of discharging a bullet . . . completely defective . . . [and] not readily repairable." The court then quoted *Commonwealth v. Layton*, 452 Pa. 495, 307 A.2d 843 (1973), for the principle that the handgun here was so "defective or damaged that it was no longer functional within the nature of its original design." Hence, the court concluded, the mandatory minimum sentence set forth in Section 9712.1 "is not applicable [here] because the Defendant's firearm is inoperable." Trial Ct. Op., 7/17/08, at 3–4.

The Superior Court reversed in a divided published opinion, which restored the five-year mandatory minimum sentence originally imposed. *Commonwealth v. Zortman*, 985 A.2d 238 (Pa.Super.2009). The panel majority opinion by Judge Bowes stated that, as the prosecutor had argued to the trial court, Section 9712.1 expressly adopts the definition of a "firearm" set forth in Section 9712, which embraces any weapon "which **will or is designed to or may readily be converted** to expel a projectile by the action of an explosive or the expansion of gas

therein" (emphasis in opinion). Moreover, the panel majority rejected the trial court's reliance on *Layton*. The panel majority noted that *Layton* involved an entirely different statute, the Uniform Firearms Act ("UFA"), and a previous UFA definition of "firearm" at 18 Pa.C.S. § 6105 that has since been amended to include circumstances where (like here) a firearm is inoperable. *Layton* was thus inapplicable because Section 9712.1's companion statute, Section 9712, sets forth a definition of "firearm" that expressly applies to both statutory provisions. *See* 985 A.2d at 241–42.

Turning to a construction of Section 9712's definitional language, the panel majority stated that the provision's phrase "is designed to" applies here where, regardless of whether the handgun in appellant's residence could fire bullets, it was clearly designed to do so:

> Thus, it is irrelevant that the weapon in question did not have a firing pin and was no longer capable of actually firing a bullet; the record establishes that it was a gun that had been designed to shoot bullets. It thereby fell within the definition of firearm under § 9712(e) and thus, § 9712.1. We will not import a requirement of operability by relying upon *Layton*. As noted, *Layton* interpreted another definition of firearm that was ultimately altered in 1995.

985 A.2d at 242–43. Therefore, the panel majority concluded, the mandatory minimum sentence must be reinstated here, particularly in light of the fact that Section 9712.1 "is designed to deter drug dealers who utilize weapons" and appellant was "involved in a significant drug distribution scheme," based on the extensive drug evidence found when the residence was searched. *Id.* at 244.

The dissenting opinion by Judge Popovich asserted that even though the definition of "firearm" in Section 9712 may be clear and unambiguous, the adoption of that definition in Section 9712.1 "complicates the inquiry." The dissent viewed *Layton* as applicable precedent because even though *Layton* involved the UFA, *Layton* was "instructional" in determining the meaning of "firearm" in this case. In the dissent's view, appellant's handgun was so defective that, in the language of

*Layton,* it was not "readily repairable," which rendered it "something less than a 'firearm' proscribed by § 9712.1 via § 9712." Finally, the dissent agreed with the trial court that the importation of Section 9712's definition of "firearm" into Section 9712.1 did not necessarily mean that the entire body and ethos of Section 9712–sentence enhancement where the criminal's "visual possession of a firearm ... places the victim in reasonable fear of death or serious bodily injury"—should also be engrafted onto Section 9712.1. *Zortman,* 985 A.2d at 244–49 (Popovich, J., dissenting).

 This Court granted appellant's petition for allowance of appeal to address the potential dissonance between *Layton* and the definition of "firearm" in Section 9712, as expressly adopted in Section 9712.1. The question presented is: "Whether an inoperable handgun is a firearm pursuant to 42 Pa.C.S. § 9712(e) for sentence enhancement purposes." *Commonwealth v. Zortman,* 605 Pa. 658, 993 A.2d 869 (2010). This is a question of statutory construction, which presents a pure question of law, meaning our review is plenary and non-deferential. *See Commonwealth v. McCoy,* 599 Pa. 599, 962 A.2d 1160, 1162 (2009).

Appellant argues that Section 9712.1 should be read to require the Commonwealth to demonstrate the actual operability of a firearm found in close proximity to illegal drugs. Appellant challenges the Superior Court panel majority's reasoning that the phrase "designed to ... expel a projectile" embraces a weapon, such as hers, lacking a firing pin. In appellant's view, "[a]n incomplete handgun missing the critical firing pin is not designed to fire bullets.... [Section] 9712(e)'s definitional requirement is not simply met by a firearm 'designed' to expel a projectile, but one that readily can expel a projectile." Appellant's Brief at 8–9.

Appellant cites two Superior Court cases for the principle that operability must be part of the analysis when a court is considering application of a mandatory minimum sentence: *Commonwealth v. Bond,* 362 Pa.Super. 48, 523 A.2d 768 (1987) and *Commonwealth v. Fitzhugh,* 360 Pa.Super. 217, 520 A.2d

424 (1987). In *Bond,* a robbery case, the court stated that no cases had yet been decided "detailing the type and quality of evidence that the Commonwealth may introduce to prove that a weapon is a 'firearm' under § 9712(e)," but that *Layton,* although a UFA case, was a viable analogy: "We therefore adopt the reasoning employed in *Layton* and hold that, to find that a weapon is operable and hence a 'firearm' under § 9712(e), the factfinder need not be presented with direct proof of operability—*i.e.,* introduction of the weapon itself, evidence that it was fired, or evidence that a witness observed its operating mechanism—but can infer operability from circumstantial evidence." The *Bond* court concluded that the credible testimony of the robbery victims, who saw Bond brandish a gun at them, was sufficient evidence that the firearm was "operable" for purposes of mandatory sentencing under Section 9712. *Bond,* 523 A.2d at 770–71.

In *Fitzhugh,* the victim testified that the defendant robbed him at gunpoint. The trial court declined to impose the mandatory minimum sentence because the Commonwealth failed to establish operability. The Superior Court disagreed and remanded for imposition of a mandatory sentence after concluding that operability becomes an issue only if either side raises the potential of the weapon's inoperability: "In the instant case, no evidence tending to establish inoperability was presented at trial or during the sentence hearing. Consequently, the Commonwealth was under no obligation to establish operability." 520 A.2d at 432–33.

More pertinently, appellant also presents a statutory construction argument that essentially mirrors the reasoning of the trial court. Appellant posits that a distinction should be recognized between "the commonsensical notion that society experiences violent crime animated by the use of a firearm, operable or inoperable, in the same threatening way ... in contrast to the mere existence of an inoperable firearm in close proximity to a controlled substance, with no brandishing." Appellant also suggests that the General Assembly "never intended" for an inoperable firearm in a drug case to trigger "the same five-year mandatory sentence it mandator-

ized in violent crimes where a firearm was used or brandished." Appellant asserts that the Superior Court's contrary conclusion effectively means that the entirety of Section 9712, addressing violent crimes actually committed with firearms where operability is irrelevant, is incorporated into Section 9712.1, instead of just the definition of "firearm" at Section 9712(e), which does not address operability. Appellant's Brief at 9–11.

The Commonwealth responds that there is no basis for appellant's attempt to distinguish between operability and inoperability for mandatory sentencing purposes in the context of Section 9712.1 (drug offenses) versus Section 9712 (violent crimes). The Commonwealth notes that the language of both sections is clear and unambiguous, and does not require operability, but instead requires only that the weapon "is designed to expel a projectile," as appellant's firearm certainly was. To the Commonwealth: "the loaded weapon at issue here, regardless of the missing firing pin, was one that was designed to expel a projectile." The Commonwealth adds that the presence in Section 9712 of the disjunctive "or" in the definition of "firearm"—"will or is designed to or may readily be converted to expel a projectile"—broadens the swath of applicable "firearms" and supports application of the mandatory sentence here. Finally, the Commonwealth forwards a construction argument premised upon the maxim *expressio unius est exclusio alterius* (matters not included in a statutory provision are deemed to be excluded). The Commonwealth notes that Section 9712.1 has no operability requirement and that the General Assembly could easily have included the requirement if it so intended. The Commonwealth adds that "[b]eside this omission, the definition's orientation to design and convertibility appear to recognize, albeit tacitly, that a qualifying object might not be instantly functional." Commonwealth's Brief at 5–6.

The Commonwealth also rejects any reliance upon *Layton,* arguing that: (1) *Layton* addressed an entirely different statutory scheme, the UFA, and (2) the definition of "firearm" within the UFA was amended in 1995 to mirror the broader

32

language in Section 9712's definition of "firearm." Thus, the UFA now defines "firearms" as "any weapons which are designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon." 18 Pa.C.S. § 6105(i). Turning to the *Bond* and *Fitzhugh* cases, the Commonwealth notes that the Superior Court improperly and unnecessarily "interjected a requirement of operability into the definition of 'firearm' under 9712" that was not supported by the statutory text. The Commonwealth also points to Section 9712(a), which the General Assembly amended in 1995 to make clearer that the enhancement is applicable "whether or not the firearm or replica was loaded or functional." In the Commonwealth's view, the General Assembly intended this amendment to "correct" the Superior Court's holdings in *Bond* and *Fitzhugh*. Commonwealth's Brief at 7–8. By the same token, the Commonwealth argues that the "absence of similar language" regarding operability in Section 9712.1 (as opposed to Section 9712(a)) is conclusive of legislative intent. The Commonwealth explains that Section 9712.1 was enacted in 2004 as a companion to Section 9712, expressly imports Section 9712's definition of "firearm," and neither subsection (e) nor subsection (a) of Section 9712 requires the Commonwealth to establish operability. The Commonwealth concludes that the Superior Court in this case correctly interpreted the pertinent statutory provisions and correctly declined to import an inapplicable caselaw-based "operability requirement" from the *Layton/Bond/Fitzhugh* cases into the clear mandatory sentencing enhancement scheme detailed at sections 9712 and 9712.1. Commonwealth's Brief at 9–10.

Both sides present case law-oriented arguments, but we need not look outside the plain language of Sections 9712 and 9712.1 to decide this matter. It is well-settled that the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly and that the plain language of the statute is generally the best indicator of such intent. 1 Pa.C.S. § 1921(a), (b). When ascertaining the intent of the General Assembly, there is a

presumption that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable. 1 Pa.C.S. § 1922(1). Furthermore, the words of a statute shall be construed according to rules of grammar and according to their common and approved usage. 1 Pa.C.S. § 1903(a). Every statute shall be construed, if possible, to give effect to all its provisions. 1 Pa.C.S. § 1921(a). We will only look beyond the plain meaning of the statute where the words of the statute are unclear or ambiguous. 1 Pa.C.S. § 1921(c); *see also Commonwealth v. Diodoro*, 601 Pa. 6, 970 A.2d 1100, 1106 (2009). Finally, we also presume that when enacting legislation, the General Assembly is familiar with extant law. *White Deer Twp. v. Napp*, 603 Pa. 562, 985 A.2d 745, 762 (2009).

Section 9712, the "original" statutory provision enabling mandatory minimum sentencing enhancement for violent "offenses committed with firearms," was first enacted in 1974 and currently defines a "firearm" as follows: "Any weapon, including a starter gun, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive or the expansion of gas therein." 42 Pa.C.S. § 9712(e). Section 9712.1, which was enacted in 2004 (effective January 31, 2005) to address drug trafficking offenses, reads in pertinent part as follows: "As used in this section, the term 'firearm' shall have the same meaning as that given to it in section 9712 (relating to sentences for offenses committed with firearms)." 42 Pa.C.S. § 9712.1.

There is no ambiguity or lack of clarity in the statutory provisions at issue here. Section 9712.1 expressly states that the term firearm **shall have the same meaning as that given to it in section 9712.**" The definition of "firearm" in Section 9712 is clear and unambiguous: "Any weapon, including a starter gun, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive or the expansion of gas therein." This definition requires only that the weapon be capable of firing a bullet ("will"), easily rendered capable of firing a bullet ("may readily be converted") or, pertinent to this case, "designed to" fire a bullet. The

parties here focus on the third sub-definition, regarding design.[3] Webster's Dictionary defines "design" in a number of ways, including as both a verb and a noun, but these variants on the definition all share the quality that the design itself, or the thing designed, is something planned, intended, purposeful, deliberate, or even "schemed" towards some specific end or outcome. The General Assembly was more than capable of drafting Section 9712.1 to differentiate between the use or presence of firearms in the context of drug offenses as opposed to violent offenses, or to include an operability requirement in Section 9712.1 that would render it different from Section 9712, which expressly negates such a requirement. That the General Assembly made no such distinctions when it drafted Section 9712.1 suggests that it intended a unitary definition. Nothing in the Commonwealth's plain reading of Section 9712.1 is either absurd or unreasonable.[4]

Although the loaded Smith & Wesson .357 Magnum handgun was missing its firing pin and thus was inoperable, we have no doubt that the handgun was "designed to" fire a bullet. Arguably, firing a bullet is the only true "designed"

3. The parties do not present arguments regarding the second subdefinition, which focuses on convertibility. Nothing in this opinion should be read as rejecting the notion that a handgun without a firing pin may be "readily convertible" into a firearm by simply replacing the firing pin.

4. Notably, the available legislative history indicates that the General Assembly's main concern in enacting Section 9712.1 was not to ponder the definition of a "firearm," but to provide law enforcement and prosecution personnel across the Commonwealth with greater means to "break the link between guns and drugs once and for all. . . . The whole purpose of this legislation to provide a mandatory sentence is to take guns out of drug trafficking and stop gun violence." *Consideration of H.B. 752 Continued*, Pa. H.R. Reg. Sess. No. 105 (Dec. 16, 2003) (statement of Rep. Bard of Montgomery County); "The purpose of this amendment is to provide a deterrent for those who are dealing in drugs and using firearms." *Reconsideration of A5329*, Pa. S. Reg. Sess. No. 65 (Nov. 19, 2004) (statement of Sen. Piccola of Dauphin County). It is true that brandishing a gun during a crime of violence with regard to Section 9712 is not the same as the "close proximity" requirement in Section 9712.1, which applies to drug crimes. But the determination of the General Assembly to treat these different scenarios in the same manner for purposes of mandatory sentencing was a distinct policy matter for that legislative body.

function—in fact, the essence—of a handgun, pistol, or "firearm." This is so whether the handgun is functional, defectively manufactured, or temporarily inoperable for some other reason. A car without gas does not lose its identity as an entity designed for locomotion. A laptop computer does not cease to be a computer if its battery is removed. By the same reasoning, nor does a handgun lose its designed function merely because a critical piece is missing. The Superior Court correctly concluded: "Thus, it is irrelevant that the weapon in question did not have a firing pin and was no longer capable of actually firing a bullet; the record establishes that it was a gun that had been designed to shoot bullets. It thereby fell within the definition of firearm under § 9712(e) and thus, § 9712.1." 985 A.2d at 243. Appellant's interpretation of "firearm" as requiring some show of operability would negate Section 9712's definition of a "firearm" as, *inter alia,* a weapon "designed to" fire bullets.

Nor is this plain language construction of Sections 9712 and 9712.1 contrary to judicial precedent. The *Layton, Fitzhugh,* and *Bond* cases do not require a construction of Sections 9712 and 9712.1 that would be contrary to those provisions' plain meaning. *Layton,* a 1973 decision of this Court, addressed a since-superseded definition of "firearm" in a different statute—the UFA. The UFA definition of "firearm" addressed in *Layton* has since been superseded with language essentially identical to that in Section 9712; in both statutory schemes, operability does not have the same relevance that it had under the previous version of the statute. Second, the UFA provision at issue in *Layton* was aimed at deterring violent criminals from possession of firearms. This analytical framework may once have served as a viable analogy to Section 9712, which is directed at violent crimes committed with a firearm, but it has little theoretical correlation to Section 9712.1, which is directed at the specific realm of drug trafficking offenses.

Moreover, neither *Fitzhugh* nor *Bond,* which were fact-bound armed robbery cases decided pursuant to Section 9712 and with reference to *Layton,* stand for the principle appellant advances in this case—that the Commonwealth must show

actual operability for Section 9712.1 to apply. *Fitzhugh* and *Bond* construed Section 9712 and referenced *Layton* merely for the principle that the Commonwealth must mount some evidence, such as credible witness testimony, that a defendant visibly possessed a firearm that met the statutory definition; these cases addressed operability in a context (the former version of the UFA) not at issue here. Nor did these cases constrain the General Assembly from negating operability in Section 9712 and expressly adopting Section 9712's definition of a firearm when it enacted Section 9712.1 in response to the increasing prevalence of guns in the realm of drug trafficking, as the legislative passages excerpted at footnote 4, *supra*, reveal. These cases do not support appellant's attempt to have this Court import or engraft an operability requirement into the otherwise plain and clear language of Section 9712's definition of "firearm," as adopted without qualification in Section 9712.1.

Ultimately, the trial court's analysis here, echoed by appellant, focuses on questions of policy and distinctions between violent crime and drug trafficking. But, as has often been stated, it is the General Assembly's "prerogative as the policy-setting branch" to make (or decline to make) such distinctions. *See, e.g., In re D.L.H.*, 606 Pa. 550, 2 A.3d 505, 515 (2010). The fact that no legislative distinction was made here is not a legitimate ground to ignore the plain language of the statute: the .357 Magnum handgun found in appellant's residence in close proximity to the narcotics, with or without its firing pin, was by definition a "firearm."

Affirmed.

Justices SAYLOR, EAKIN, BAER, TODD, McCAFFERY, and ORIE MELVIN join the opinion.