94 A.3d 991

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Jennifer Ann KERSTETTER, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 19, 2013.

Decided June 16, 2014.

Darren A. Jones, Esq., James R. Mason III, Esq., Home School Legal Defense Association, Richard Winkler, Esq., Butcher & Winkler, Titusville, for Home School Legal Defense Association.

Patrick Adam Johnson, Esq., Snyder County Public Defender's Office, for Jennifer Ann Kerstetter.

Michael F.J. Piecuch, Esq., for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## OPINION

Chief Justice CASTILLE.

This appeal concerns whether the Pennsylvania School Code's compulsory school age and attendance provisions (24 P.S. §§ 13–1326 & 13–1327) apply to children under eight years old whose parents voluntarily enroll them in public kindergarten programs made available by school districts. The trial court and Commonwealth Court both held that once a child who meets a district's minimum entrance age is enrolled in a district's public school kindergarten program, the child is subject to compulsory school attendance, meaning continuous and consistent attendance without excessive unexcused absences. We affirm.

By way of background, Article V of the School Code (addressing "Duties and Powers of Boards of School Directors") requires every school district to "establish, equip, furnish, and maintain a sufficient number of elementary public schools, in compliance with the provisions of this act, to educate every person, residing in such district, between the ages of six and twenty-one years, who may attend." 24 P.S. § 5–501(a). The same article makes clear that school districts are not required to establish kindergarten programs, although they may do so as a matter of discretion, and if a district establishes such a program, it "shall be an integral part of the elementary school system of the district, and be kept open for not less than two and one-half hours each day for the full school term...." *Id.* § 5–503.[1]

Appellant enrolled her twin five-year-old daughters in the 2011–12 school year kindergarten program at West Beaver Elementary School, which is part of the Midd–West School District ("District") in Snyder County.[2] For reasons not

1. Section 5–503 also provides, however, that if the average attendance in any one kindergarten in any district is ten or less children for the school year, the district is to discontinue the program. *Id.*

2. The children were previously in the custody of the local Children & Youth Services ("CYS"), which enrolled them in kindergarten in another school district. When appellant regained custody, she transferred and enrolled the children in Midd–West's kindergarten. The trial court

entirely made clear in the record, appellant had difficulty getting the children to kindergarten consistently; at least three unexcused documented absences occurred in November and December 2011. The absences were reported to the District and in January 2012, appellant was issued summonses for three violations of the School Code's compulsory school attendance provision at 24 P.S. § 13–1327.[3] After a summary trial on February 3, 2012, a magisterial district judge found appellant guilty of all three counts; a fine, costs, and fees were imposed upon appellant for each count. On February 28, 2012, appellant filed a summary appeal with the Snyder County Court of Common Pleas, which scheduled a hearing, or trial *de novo*, for May 8, 2012.

At that proceeding, the court initially noted that since the charges carried no risk of incarceration, appellant was not entitled to court-appointed counsel; appellant then entered a plea of not guilty. David Harrison, principal of the elementary school and an administrator with the District, testified that the District followed the Pennsylvania School Code of 1949 and maintained a compliant written policy that set forth lawful excuses for absences and advised that parents/guardians had a three-day grace period after an absence to provide a proper excuse. Harrison testified that appellant had never to his knowledge provided the school with legitimate excuses for her daughters' absences. Harrison said that a school counselor had spoken with appellant to discuss her difficulty getting her

found that appellant enrolled her children in school when she effected the transfer, and this fact has not been disputed throughout the litigation. N.T., 5/8/12, at 15–16; N.T., 6/29/12, at 9; *see also Commonwealth v. Kerstetter*, 62 A.3d 1065, 1067 n. 3. (Pa.Cmwlth.2013).

**3.** Section 13–1327 provides, with certain exceptions not applicable here, that: "every child of compulsory school age having a legal residence in this Commonwealth, as provided in this article, and every migratory child of compulsory school age, is required to attend a day school in which the subjects and activities prescribed by the standards of the State Board of Education are taught in the English language...." *Id.* Penalties for a violation of the compulsory attendance provision include a fine up to $300 and attendance and completion of a parenting program; if these sanctions are not satisfied, the parent or guardian may receive a county jail sentence of up to five days. 24 P.S. § 1333.

daughters to school, but he was not aware of any concrete reason (such as transportation issues) why the children could not attend school consistently. N.T., 5/8/12, at 5–13.

Appellant testified that at the time of the absences in question, she had just regained custody of the girls after a period they spent away from her under supervision of the local Children and Youth Services ("CYS"). The record does not explain the length of time or reason why the children were with CYS. According to appellant, the children "acted out" in the mornings and refused to get dressed; she thought the girls were anxious about school and being away from her, even for the day. Appellant testified that she spoke with a school counselor and asked for help, but was refused. Appellant added that she learned from a "Pennsylvania State Education website" that children in kindergarten were not subject to truancy citations; rather, she understood it to mean that "[o]nly students of compulsory school age, which is first grade, age 8, can be cited." N.T., 5/8/12, at 13–19.

The court took a short recess for the parties to research the online information appellant had relied upon. When proceedings resumed, the prosecutor noted that he found "one thing that's extremely confusing." According to the prosecutor, the Unified Judicial System ("UJS") website's recitation of Purdon's Pennsylvania Statutes mirrored the definition of "compulsory school age" in the School Code's attendance enforcement provisions: "the period of a child's life from the time the child's parents elect to have the child enter school, which shall be not later than at the age of eight (8) years, until the age of seventeen (17) years." 24 P.S. § 13–1326 ("Enforcing Attendance: Definitions"). But, the prosecutor further noted, the entry for "compulsory school age" on the Department of Education's website, to which appellant had adverted, also included the term "beginner," which is defined in a different section of Article 13 of the School Code as: "any child that should enter the lowest grade of the primary school or the lowest primary class above the kindergarten level." 24 P.S. § 13–1304(c) ("Admission: Admission of Beginners"). The prosecutor concluded: "If that's correct, [appellant] is abso-

lutely correct, that a child who is enrolled in kindergarten is not of compulsory school age." N.T., 5/8/12, at 19–20.

Neither the prosecutor nor Principal Harrison were able to explain the potential discrepancy or relationship between "compulsory school age" and "beginner." The prosecutor suggested that because providing kindergarten is optional for school districts in Pennsylvania, perhaps districts cannot compel children's attendance at kindergarten. At that point, the prosecutor stated: "I think that [appellant], in fairness, without me being her attorney, has a colorable argument here." The court, unable to resolve what it described as a "perplexing question" without further advocacy, continued the matter and appointed the county public defender to represent appellant; the parties were to prepare memoranda addressing "compulsory school age" and "beginner" under the School Code. N.T., 5/8/12, at 20–29.

At a further hearing on June 29, 2012, the trial court observed that the Department of Education's regulations commingle the terms "beginner" and "compulsory school age," despite their evident inconsistency. Reading from the Department's regulations at 22 Pa.Code § 11.13, the court stated: "[C]ompulsory school age refers to the period of the child's life from the time the child enters school as a beginner, which may be no later than at the age of 8 years, until the age of 17 or graduation from a high school, whichever first occurs. A beginner is a child who enters a school district's lowest elementary grade—elementary school grade that is above kindergarten." According to the court, the Department's regulation improperly modified the Code's statutory definition of "compulsory school age" by importing "beginner" into it. As a practical matter, the court added, the Department's regulation required that school districts enroll children upon a parent or guardian's election, but then improperly prevented districts from compelling kindergarten attendance, which could result in "kindergarten classes from no one up to the full enrollment or anything in between with no way of structuring an educational program." The court doubted that the General Assembly intended to create such a practical dilemma for

school districts, and concluded that the Department's regulation was an impermissible modification of legislation, which could not be given legal effect. Thus, under Section 13–1327 of the School Code, the trial court concluded that once appellant enrolled her children in kindergarten, they were *de facto* of "compulsory school age," and therefore subject to the compulsory school attendance requirement. N.T., 6/29/12, at 2–7.

Appellant's counsel orally moved to dismiss the charges. While denying the motion, the trial court recognized that the issue was problematic, and that it could potentially affect school districts across the Commonwealth; the court therefore determined that an interlocutory appeal to the Commonwealth Court would be appropriate. N.T., 6/29/12, at 10–13. In an order on the same date, the court formally denied appellant's motion to dismiss, but deemed the matter continued in expectation of appellant's appeal to the Commonwealth Court. Appellant (represented by the same counsel, but in a private capacity and no longer as public defender) timely filed a petition seeking to certify the matter for interlocutory appeal, which the trial court granted in an order dated July 30, 2012. The Commonwealth Court accepted the appeal in an order dated August 21, 2012, and stayed proceedings at the trial court level pending the appeal.

In its Pa.R.A.P. 1925(a) opinion on the merits, the trial court noted that the apparent "audiences" of the two School Code sections at issue differed. According to the court, Section 13–1327 ("compulsory school age") directs and instructs parents and students on compulsory attendance, while Section 13–1304 guides school districts in developing legally compliant admissions policies and programs. The court concluded that despite the confusion wrought by inclusion of the term "beginner" in the Department's regulation on compulsory school age, the General Assembly clearly intended that once a parent or guardian enrolls a child in public school, including kindergarten if it is available, the child must attend consistently, subject to the Code's compulsory attendance provisions. Trial Ct. Op., 9/20/12, at 1–3.

As a matter of public policy and practicality, the trial court added, this construction is most logical because for districts to voluntarily provide for kindergarten, but then to be unable to enforce the School Code's compulsory attendance provisions, "would essentially turn our public schools into a free child care situation." In addition to concluding that appellant's children were subject to the compulsory attendance requirement, the trial court added that the Department's regulation suggesting otherwise "should immediately be reversed and corrected to comply with the clear mandate of the statute." *Id.*

Appellant's brief to the Commonwealth Court relied upon *O'Leary v. Wisecup*, 26 Pa.Cmwlth. 538, 364 A.2d 770 (1976), to argue that attendance is not compelled at the kindergarten level, but rather only when a child is old enough to be a "beginner" eligible for primary school, which generally begins with first grade.[4] To appellant, the Department's regulation to this effect was the strongest indicator of legislative intent. Appellant added that since the School Code was passed in 1949, no ensuing legislative directive has made kindergarten attendance mandatory: "To put it simply, if the legislature had intended to compel kindergarten students to attend school and be subject to the sanctions of the Compulsory Attendance Laws, then action would have been taken by now." Appellant's Brief to Commonwealth Court, at 5–7.

The Commonwealth responded that the interpretive key is not whether a child is by age a "beginner" eligible for first grade, but the fact of the child's enrollment in school, whether in kindergarten or a higher grade level, upon the decision of the parent or guardian. The Commonwealth asserted that

4. *O'Leary* upheld a school district's refusal to admit to kindergarten a student who met the age requirements for kindergarten in his original district, but was too young to meet the requirements in the district to which he moved with his family mid-school year. Relevant to this case, the *O'Leary* opinion stated: "An examination of the state statutes involved here, however, clearly indicates that a local school district is required to provide a free public education only to those resident children who enter school as 'beginners' at the primary level (above the kindergarten level), and that the Department's regulations compel attendance for 'beginners[,]' not for kindergarten students." 364 A.2d at 773. We further discuss *O'Leary*, where relevant, *infra*.

"despite an inconsistent regulatory definition to the contrary," the plain and unambiguous language of the statute, per Section 13–1326's definition of "compulsory school age," dictates that once children are enrolled in school, regardless of grade or age, the compulsory attendance requirement is triggered. The Commonwealth added that, as the trial court had explained, the term "beginner" is not used in Section 13–1326's attendance enforcement provision at all, but rather is found in a distinct School Code provision, Section 13–1304. That Section defines the class of students for whom school districts must provide education (students above six years old through seventeen years old or completion of high school). To the Commonwealth, although Sections 13–1326 and 13–1304 both address the age when children may start school, they do so for different purposes and there was no conflict, impossibility, or absurdity in the trial court's construction. Furthermore, the Commonwealth added, the statute overrides any inconsistent departmental regulation. Commonwealth's Brief to Commonwealth Court, at 1–4.

The Commonwealth Court affirmed in a published opinion by a divided panel. *Commonwealth v. Kerstetter*, 62 A.3d 1065 (Pa.Cmwlth.2013). Writing for the panel majority, the Honorable Robert Simpson found the statutory definition of "compulsory school age" at Section 13–1326 to be clear and unambiguous; and the Department of Education's regulation, 22 Pa.Code § 11.13, with its use of the term "beginner," to be "clearly inconsistent" with the Code and therefore of no effect under the settled proposition that the governing statute trumps an inconsistent administrative regulation.

The majority rejected appellant's reliance on *O'Leary* because that decision focused primarily on whether a school district must accommodate another district's enrollment policies and, except in *dicta,* did not look at whether children enrolled in public kindergarten programs are subject to compulsory attendance. The majority recognized that in this case, the Department's inconsistent regulation may have caused appellant's erroneous belief that her children were not subject to compulsory attendance at kindergarten. Nevertheless, the

majority continued: "Although ... parents are not required to enroll their child in kindergarten, once the election to enroll a child in school is made, the child is subject to the Code's compulsory attendance requirements. In other words, the compulsory school attendance provisions apply to any student enrolled in public school, regardless of whether they are enrolled in kindergarten." The court thus affirmed the trial court's denial of appellant's motion to dismiss the charges and remanded for further proceedings, including consideration of any remaining issues. Additionally, the majority directed that a copy of its opinion and order be forwarded to the Secretary of the Pennsylvania Department of Education, presumably to address the inconsistency between its regulation and the statutory definition of "compulsory school age." 62 A.3d at 1068–71.

In a dissenting opinion, the Honorable Rochelle S. Friedman opined that any child younger than eight years old or not yet enrolled in first grade is not of "compulsory school age." According to the dissent's reading of Section 13–1326, "the phrase 'enter school' refers to that mandated by statute, *i.e.*, education that is required beginning with first grade. Thus, a parent may choose to enroll a student in first grade earlier than, but no later than, age eight." The dissent posited that the key to Section 13–1326 is enrollment in first grade, not kindergarten:

> Because kindergarten is not mandated by statute, attendance is not compulsory. "Compulsory" is defined as "[c]ompelled; mandated by legal process or by statute...." Black's Law Dictionary 326 (9th ed. 2009). The Code's compulsory school attendance provisions apply to a child required to be enrolled in public school. This requirement commences with first grade.

*Id.* at 1071–73 (Friedman, S.J., dissenting).

■ This Court granted appellant's petition for allowance of appeal, accepting the issue as framed by appellant:

> Did the Commonwealth Court of Pennsylvania err when it held that a kindergarten student under the age of eight

years is of compulsory school age pursuant to Pennsylvania's Compulsory School Attendance laws codified at 24 [P.S.] § 13–1327?

*Commonwealth v. Kerstetter,* 73 A.3d 576 (Pa.2013) (*per curiam* ). The issue having come up as one of law on interlocutory review, and the question being one of statutory interpretation, our scope of review is plenary and the standard of review is *de novo. Samuel–Bassett v. KIA Motors America, Inc.,* 613 Pa. 371, 34 A.3d 1, 51 (2011). In this case, our task is to determine the proper meaning of "compulsory school age" in the context of whether the compulsory attendance provisions of the Code apply to a child enrolled in a public kindergarten program.[5]

The parties essentially reprise the positions they articulated below. Thus, appellant argues that since Pennsylvania school districts are not compelled by law to offer kindergarten programs, a student who enrolls in such a program cannot be compelled by law to attend. Appellant initially concedes that a plain reading of Sections 13–1326 and 13–1327 of the School Code undermines her argument, but she argues that the answer differs when the Court considers those provisions in concert with other Code sections. As appellant did below, she relies on the definition of the term "beginner" in Section 13–1304 and the Department's regulations, which draw a line of distinction between "the kindergarten level" and "the lowest primary class above the kindergarten level" (generally, first grade). Appellant then posits that regular attendance can only be compelled when a child is eligible for first grade, "the lowest primary class above the kindergarten level."

Appellant also relies on *O'Leary* for the position that school attendance is compelled only for "beginners" in first grade,

5. The interlocutory question of law presented to this Court neither requires nor allows consideration of such potentially equitable factors as appellant's reliance upon the Department of Education's website in determining her obligations respecting school attendance, except insofar as they implicate appropriate precepts of statutory construction. Whether equitable factors affect the Commonwealth's decision to proceed with the prosecution upon remand, or give rise to some other issue(s), are matters upon which we offer no view.

and not for children voluntarily enrolled in kindergarten. Appellant adds that, since *O'Leary* has stood for over thirty years without being overruled or limited by the courts or the General Assembly, it should control here. Even if not, appellant stresses that the Pennsylvania Department of Education has not mandated kindergarten attendance, and that its position should be viewed as the strongest indicator of a corresponding legislative intent. And, appellant posits, since the School Code was enacted in 1949 and the governing provisions have not been changed to expressly subject kindergarten students to compulsory school attendance, there is no basis for courts to do so now.

Echoing the dissent below, appellant next argues that a contrary holding imposes a "hypocritical burden" upon parents, forcing them to ensure their children's kindergarten attendance while school districts are not compelled to offer kindergarten in the first place. Appellant's Brief, at 10 (citing *Slippery Rock Area Sch. Dist. v. Pa. Cyber Charter Sch.*, 612 Pa. 486, 31 A.3d 657 (2011) for proposition that a kindergarten education is not a statutory entitlement).[6] Continuing, appellant contends that the legislative intent behind compulsory attendance is to ensure that by the time a child reaches eight years of age, he or she will be enrolled at least in a first grade curriculum, at which point compelled attendance is appropriate. Beyond that, appellant sees no authority in the law to find children under eight years of age truant for inconsistent attendance in programs that, like kindergarten, are provided by districts on a discretionary basis.

Appellant's *amicus curiae*, the Home School Legal Defense Association, claims that the disposition below, if upheld, could negatively affect homeschooling parents in certain circum-

6. In *Slippery Rock*, a cyber-charter school sought district funding to educate four-year-old students in kindergarten, even though the district's policy did not admit children to kindergarten until they reached five years old. Lower tribunals, including a unanimous *en banc* panel of the Commonwealth Court, found in the charter school's favor, but this Court reversed, holding that, while charter schools are free to offer kindergarten and to admit and enroll children who are younger than district-set minimum ages, charters are not entitled to district funding subsidies for doing so.

stances. *Amicus* highlights the "not uncommon" circumstance where parents enroll a child in a public kindergarten program, subsequently determine that the child is not yet ready for the "formal education setting," and withdraw the child from school. Such parents may keep the child at home or in some other arrangement until they believe the child is ready for the public school environment; in the alternative, some parents opt to homeschool a child instead of returning him or her to public school. *Amicus* calls these practices "withdrawal and waiting." *Amicus* then argues that children who have been formally withdrawn from public school for beneficial developmental reasons should not be subject to compulsory attendance laws until they reach eight years old. Rather, *amicus* believes, the School Code's compulsory attendance provisions must be read to protect the discretion of responsible parents to make this type of decision: "Parents should not be penalized with truancy charges for simply misreading a five-year-old child's readiness for institutional education." *Amicus* Brief, at 3–6.

The Commonwealth renews the plain language argument it made below, citing 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). To the Commonwealth, the compulsory school attendance provision is clear and unambiguous, and therefore its plain meaning and effect must control. The Commonwealth notes that the statutory definition of "compulsory school age" simply does not distinguish between enrollment in kindergarten and higher grades: the Code does not address which level of school a child is enrolled in, but focuses instead on the very act of enrollment, regardless of age, which includes kindergarten if such a program is offered by a school district and a parent or guardian elects to enroll their of-age child in the program. The Commonwealth also cites 24 P.S. § 5–503, which provides that kindergartens, if established by a district, "shall be an integral part of the elementary school system of the district[.]" Put another way, the Commonwealth continues, the plain language of Section 13–1326 entails two different

triggers for compulsory school attendance: (1) when a child's parents or guardians "elect to have the child enter school," or (2) when a child reaches eight years of age. In this case, appellant's daughters were under eight years old when she enrolled them in the district's public kindergarten program; to the Commonwealth, appellant thereby "elected to have the girls enter school" and they were thus subject to the mandatory attendance requirement. Commonwealth's Brief, at 2–3, 7.

Any ambiguity in this case, the Commonwealth adds, derives from the Department's erroneous regulatory interpretation of "compulsory school age" to include the term "beginner," a term which distinguishes between kindergarten and higher levels of schooling, but which is not found in Section 13–1326. The Commonwealth acknowledges that the regulatory error has been compounded by its inclusion on the Department's public website and in "Basic Education Circulars"—informational documents the Department produces and offers on its website.[7] The Commonwealth maintains that, despite the Department's advice that children in kindergarten are not "beginners" and therefore are not subject to mandatory attendance, this is not what Section 13–1326 actually says. The Commonwealth posits that any alleged ambiguity regarding the term "compulsory school age," as used in the attendance enforcement provisions in Sections 13–1326 and 13–1327, arises only from the presence of the term "beginner" from a separate School Code provision, Section 13–1304. The Commonwealth stresses that Section 13–1304 addresses the manner in which school districts are required to admit students into the lowest grade of primary school, for which purpose the children are termed "beginners." However, according to the Commonwealth, "[t]he term 'beginner' has nothing to do with compulsory school attendance; it defines the class of students

7. The Department's website describes these publications as follows: "A Basic Education Circular (BEC) provides the Department of Education's guidance on the implementation of law, regulation and policy." The relevant publication is titled "Compulsory Attendance and Truancy Elimination Plan," which was issued on August 8, 2006. *See* http://www.1fportal.state.1fpa.us/portal/server.pt/community/purdon's_statut es/7503/compulsory_attendance_and_truancy_elimination_plan/507353 (last visited May 23, 2014).

that the state is obligated to educate." To the Commonwealth, because the Department's regulatory interpretation of "compulsory school age" is plainly inconsistent with the statute itself, and would limit its application, the regulation is invalid.

The Commonwealth next addresses *O'Leary*, noting that while the School Code's compulsory attendance provisions were mentioned in that case, they were not central to the question actually presented, which was whether there is a statutory entitlement to kindergarten education. The Commonwealth stresses that *O'Leary*'s holding that districts are not compelled to provide kindergarten does not answer the distinct question here, which is whether a kindergarten program, once offered by a district and enrolled in by children of the requisite minimum entrance age, triggers the mandatory attendance of its students. Commonwealth's Brief, at 3–8.

Ultimately, the Commonwealth describes appellant's argument as resting on a "faulty syllogism," *i.e.,* that because school districts are not required to provide kindergarten programs, and parents are not required to enroll their children in available programs, it follows that parents who **do** elect to enroll their children in kindergarten need not ensure that their children attend consistently without unexcused absences. The correct logic, the Commonwealth offers, is that all children enrolled in school are subject to compulsory attendance; all children enrolled in kindergarten are enrolled in school, as set forth in Section 5–503; and therefore all children enrolled in kindergarten are subject to compulsory attendance. In a footnote, the Commonwealth addresses the arguments forwarded by *amicus* respecting enrolled children whose parents later determine they are not quite ready for school. The Commonwealth states that it supports the concept of a formal "withdrawal and waiting," and would not view such children as subject to compulsory attendance. But, the Commonwealth also stresses that the issue here did not involve withdrawal and waiting, but rather, appellant's inability to get her daughters to school; a fact that *amicus* essentially conceded. Commonwealth's Brief, at 8–9 & n. 10.

■■■■ As reiterated in *Mercury Trucking, Inc. v. Pennsylvania Public Utility Commission*, 618 Pa. 175, 55 A.3d 1056 (2012), our well-settled rules governing statutory construction are as follows:

> The object of statutory construction is to ascertain and effectuate the General Assembly's intent. The plain language of a statute is, as a general rule, the best indicator of such legislative intent. [*Bd. of Revision of Taxes, City of Phila. v. City of Phila.*, 607 Pa. 104, 4 A.3d 610, 622 (Pa.2010) ] (citing 1 Pa.C.S. § 1921(a)). This general rule is subject to several important qualifications, including the precept that the General Assembly "does not intend a result that is absurd, impossible of execution, or unreasonable." *Commonwealth v. Shiffler* [583 Pa. 478], 879 A.2d 185, 189–90 (Pa.2005) (alternative construction of seemingly clear mandatory sentencing provision warranted to avoid absurd incongruity with graduated sentencing scheme) (citing 1 Pa.C.S. § 1922(1), (2))....
>
> Similarly, if the words of a statute are not explicit but are unclear or ambiguous, we resort to considerations other than the plain language to discern legislative intent. *Commonwealth v. Garzone* [613 Pa. 481], 34 A.3d 67, 75 (Pa. 2012) (citing 1 Pa.C.S. § 1922; *Commonwealth v. Diodoro* [601 Pa. 6], 970 A.2d 1100, 1106 (Pa.2009)). Among the matters we may consider are: the occasion and necessity for the statute; the circumstances under which the statute was enacted; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; the contemporaneous legislative history; and the legislative and administrative interpretations of such statute. 1 Pa. C.S. § 1921(c).

*Id.* at 1067–68. Furthermore, "the words of a statute shall be construed according to rules of grammar and according to their common and approved usage. Every statute shall be construed, if possible, to give effect to all its provisions." *Commonwealth v. Zortman*, 611 Pa. 22, 23 A.3d 519, 525 (2011) (citing 1 Pa.C.S. §§ 1922(1), 1903(a), & 1921(a)). When an agency regulation is at issue, the Court will consider, *inter*

*alia,* "whether the regulation is consistent with the statute under which it was promulgated." *Tire Jockey Service, Inc. v. Commonwealth, Dep't of Envtl. Prot.,* 591 Pa. 73, 915 A.2d 1165, 1186 (2007); *see also Slippery Rock Area Sch. Dist. v. Unemployment Comp. Bd. of Review,* 603 Pa. 374, 983 A.2d 1231, 1241 (2009) ("Indeed, all regulations, whether legislative or interpretive 'must be consistent with the statute under which they were promulgated.' ").

 As we noted at the outset, school districts are not required to establish kindergarten programs, but if they do establish such programs, they become an integral part of the school district. At issue here is whether attendance in existing kindergarten programs is compulsory once a parent or guardian chooses to enroll a child. Article XIII of the School Code, which addresses "Pupils and Attendance," has two parts of relevance to considering the parties' arguments: Part A addresses "Attendance," and Part B addresses "Enforcing Attendance." Section 13-1304 is found in Part A, is titled "Admission of Beginners," and provides in three subsections that: (a) school districts "shall admit beginners" during at least the first two weeks of the annual school term for districts operating on an annual promotion basis, or within the first two weeks of either semester for districts operating on a semi-annual promotion basis; (b) admission "shall be limited to beginners" who have attained the age of five years and seven months at the relevant date of admission, but vesting discretion in the district to accept some underage children, and to deny admission to some of-age beginners, depending on circumstances not pertinent to this appeal; and most relevant to this appeal, (c) (verbatim): "The term 'beginners,' **as used in this section,** shall mean any child that should enter the lowest grade of the primary school or the lowest primary class **above the kindergarten level.**" 24 P.S. § 13-1304 (emphases supplied).[8]

8. Subsections (a) and (b) of Section 1304 read, in their entirety, as follows:

(a) School districts shall admit beginners to the public schools during at least the first two weeks of the annual school term in districts operating on an annual promotion basis and during the first two

Sections 13–1326 and 13–1327 comprise the heart of the "Enforcing Attendance" provisions found in Part B. Section 13–1326 is the lead section in Part B, is entitled "Definitions," and defines "compulsory school age" in relevant part as: "the period of a child's life from the time the child's parents elect to have the child enter school, which shall be not later than at the age of eight (8) years, until the age of seventeen (17) years." 24 P.S. § 13–1326. There is no reference in this section to "beginners," nor is there any provision in the definition that compulsory school age is restricted to primary classes above kindergarten. The next section of Part B, entitled "Compulsory school attendance," then directs that:

Except as hereinafter provided, **every child of compulsory school age** having a legal residence in this Commonwealth, as provided in this article, and every migratory child of compulsory school age, **is required to attend a day school** in which the subjects and activities prescribed by the standards of the State Board of Education are taught in the English language.... Except as hereinafter provided, every parent, guardian, or other person having control or charge of any child or children of compulsory school age is required to send such child or children to a day school in which the subjects and activities prescribed by the standards of the State Board of Education are taught in the English language.... Such child or children shall attend such school

weeks of either the first or the second semester of the school term in districts operating on a semi-annual promotion basis; thereafter, the admission of beginners shall be at the discretion of each school district.

(b) Admission shall be limited to beginners who have attained the age of five years and seven months before the first day of September if they are to be admitted in the fall, and to those who have attained the age of five years and seven months before the first day of February if they are to be admitted at the beginning of the second semester. The board of school directors of any school district may admit beginners who are less than five years and seven months of age, in accordance with standards prescribed by the State Board of Education. The board of school directors may refuse to accept or retain beginners who have not attained a mental age of five years, as determined by the supervisor of special education or a properly certificated public school psychologist in accordance with standards prescribed by the State Board of Education.

*Id.* § 13–1304(a) & (b).

continuously through the entire term, during which the public schools in their respective districts shall be in session. . . .

*Id.* § 13–1327(a) (emphases supplied). As with the definitional section, this provision makes no reference to "beginners"; it refers only to compulsory school age. Later provisions within Part B then address such matters as: excuses from attending school, exceptions to compulsory attendance (none of which are applicable in this case), and penalties for violations of compulsory attendance requirements. *Id.* §§ 13–1329, 13–1330, & 13–1333.

As noted in the procedural history described above, the regulations promulgated by the Department of Education, found in Title 22 (Education) of the Administrative Code either do not mention compulsory school age (22 Pa.Code § 11.12) or conflate the School Code concepts of beginners and compulsory school age, as in 22 Pa.Code § 11.13: "Compulsory school age refers to the period of a child's life from the time the child enters school as a beginner which may be no later than at the age of 8 years, until the age of 17 or graduation from a high school, whichever occurs first. A beginner is a child who enters a school district's lowest elementary school grade that is above kindergarten." 22 Pa.Code §§ 11.12 & 11.13.

For the following reasons, we sustain the core position of the Commonwealth and the courts below that the issue of statutory construction is resolvable on plain language terms. Section 13–1326 of the School Code addresses itself directly to enforcing school attendance, and specifically defines "compulsory school age" clearly and unambiguously as measured from the point where parents "elect" to have their children enter school (which must be done by the time a child reaches eight years of age). Unlike Part A of Article XIII, the enforcement provision says nothing about "beginners," and nothing about the compulsory attendance requirement excluding kindergarten. There is no facial tension between this definition and Section 13–1304's employment of the more restrictive term "beginners." To the contrary, Section 13–1304 explicitly

states that its definition of the term beginners (as excluding children attending kindergarten) applies only "as used in this section." *Id.* § 13–1304. Furthermore, neither Section 13–1304 nor any other provision in Part A of Article XIII purports to address "compulsory school age." Thus, the Section 13–1304 focus on "beginners" does not operate to modify Section 13–1326's definition of compulsory school age for purposes of enforcing attendance.

Read plainly, the statute conveys that once parents or guardians "elect" to have their children of requisite minimum entrance age "enter school," the obligation to comply with the Code provisions compelling consistent school attendance is triggered. At that point, the children are formally "opted in" to the public school system, whether in elementary school or kindergarten, and the plain language of the enforcement scheme in Sections 13–1326 and 13–1327 applies to them.

There is nothing absurd or unreasonable in this plain language reading. As the trial court noted, the two parts of Article XIII of the School Code address different issues (or "audiences," as the trial court put it). Part A addresses the various duties and powers of school district authorities; Part B is directed at parents and guardians and outlines their obligations respecting attendance, and the consequences of unexcused truancy. Part A thus speaks to matters such as residency requirements; the duty to ensure that every child who enrolls in school is properly immunized; the duty to enact reasonable and non-discriminatory plans assigning resident students to individual schools; the authority to close under-populated or physically decrepit schools; and the vesting of teachers, vice principals, and principals with authority over students' conduct and behavior during school hours, including the power to suspend or expel students. 24 P.S. §§ 13–1302, 1303a, 1305, 1310, 1311, 1314, 1316, 1317, & 1318. And, most pertinently, Section 13–1304 informs school districts at what point they are **obliged** to admit students to school. Since kindergarten programs are not mandatory, it makes sense that Section 13–1304 would define the district's obligation in

terms of students in primary classes above the kindergarten level.

As the trial court also persuasively recognized, a parent or guardian's obligations respecting school attendance, once a child is enrolled at either level, are a different matter—or so the General Assembly could rationally have determined—and Part B is devoted to those duties and consequences. Part B addresses various alternative schooling scenarios, such as provisions governing parents or guardians who homeschool and the duties of parents respecting children who are disabled to an extent that makes them unable to attend the local public school; this Part also includes measures intended to ensure that consistent school attendance will not be affected by a child's lack of transportation, board and lodging, or clothing and food; district authorities and localities are tasked with providing these necessities at public cost in order that children will be able to attend school every day. *Id.* §§ 13–1327.1, 1328, 1331, 1334 to 13–1337.1.

Thus, the School Code's discussion of "beginners" in the context of Section 13–1304 (children about to enter the first grade who must be of a certain minimum physical and/or mental age) and children of "compulsory school age" in the attendance enforcement context of Sections 13–1326 and 13–1327 (children of minimum district entrance age who have been enrolled by their parents/guardians in either kindergarten or the first grade) are not addressing the same thing; the entire statute may naturally be read with neither term meant to affect, alter, or expand the other's meaning.

The Department's importation into its regulations on compulsory school age and attendance of the "beginner" overlay from Section 13–1304 provides no basis to depart from our plain language reading. This Court has held that "administrative interpretations of a statute ... are entitled to some deference, particularly where a statute is technical or complex. But ... such deference will exist only where the reviewing court is satisfied that the regulation tracks the meaning of the statute, as narrowly construed, and does not violate the intent of the legislation." *Commonwealth v. Gilmour Mfg. Co.,* 573

Pa. 143, 822 A.2d 676, 679 (2003). *Accord Commonwealth, Dep't of Pub. Welfare v. Forbes Health Sys.*, 492 Pa. 77, 422 A.2d 480, 482 (1980) (administrative regulations "must be consistent with the statute under which they are promulgated."). Article XIII of the School Code is neither technical or complex; as we have explained above, the statutory construct does not admit of the Department's reading; and, thus, the regulation at 22 Pa.Code § 11.13 must stand down.

Nor does the scant decisional law offer any basis to depart from the plain language of the School Code respecting compulsory school age and attendance. The question before the Commonwealth Court in *O'Leary v. Wisecup* did not involve the perceived tension between the term "beginner" in Section 13–1304 and "compulsory school age" in Section 13–1326. The dispute in *O'Leary* was about whether a district, having elected to provide a kindergarten program which set a minimum entrance age, must bend to the different age policy of another district when a child moves from the latter to the former. The *O'Leary* court's reference to the term "beginners"—in both Section 13–1304 and the Department's regulation—was made only in the context of examining the obligations of the school district. 364 A.2d at 773 & n. 5. In any event, to the extent the *O'Leary* court replicated the Department's error in conflating "beginner" and "compulsory school age," that reading is disapproved, for the reasons we have expressed above, in this case presenting that precise question.

Next, we address appellant's allegation that the plain reading of the compulsory attendance requirement creates a "hypocritical burden" since a school district is not obliged to offer a kindergarten program at all, and yet a parent or guardian has a duty of ensuring compulsory attendance once a program exists and the parent or guardian elects to enroll a child. The perceived "hypocrisy" affords no basis in law for failing to enforce the statute as written. And, in any event, as the trial court noted, it is not difficult to imagine why the General Assembly would seek to ensure that, once a school district makes the discretionary decision to offer free public kindergarten, at its taxpayers' expense, the parents whose children

are its beneficiaries, should the parents elect to do so, be required to make use of the program. Viewed in this light, there is no hypocrisy, but symmetry: to reap the benefits of publicly funded education for a child, the parent/guardian must comply with a relatively few rules and regulations: immunization and consistent attendance being the most prominent.

Finally, we turn to the "withdrawal and waiting" scenario posed by *amicus, i.e.,* the claimed "common" circumstance in which a parent enrolls a child in kindergarten, later realizes that the child is not mature enough yet for the experience, and thus withdraws the child from school. *Amicus* warns that this is a salutary practice that could be compromised by enforcing the compulsory attendance requirement against children enrolled in kindergarten. However, it is undisputed that appellant did not withdraw her daughters—formally or informally—based upon a judgment that they were not yet ready for formal schooling; she simply had difficulty managing to motivate or convince her children to ready themselves on certain days.

We did not accept this case for briefing and argument on the scenario presented by *amicus.* Without a record and briefing devoted to the question, we are in no position to opine upon the inter-relationship between the compulsory attendance requirement triggered by enrollment in school and a parent's later decision that an enrolled child, otherwise of an age or in circumstances not yet requiring attendance at school, is not prepared and should withdraw. In light of the Commonwealth's responsive position, however, it is worth noting that it has not been argued to us, nor is it apparent, that the School Code is being enforced in Pennsylvania in a fashion that prevents parents from formally withdrawing their children from kindergarten; nor should this Opinion be read as approving (or disapproving) of such a practice.[9]

9. Section 13–1332 of the Code addresses, *inter alia,* "attendance and withdrawals" and requires teachers and principals to "report at once" the name of any student withdrawing from the school and the date of withdrawal. 24 P.S. § 13–1332. The provision thus appears to con-

In light of the foregoing, we hold that once a parent/guardian elects to enroll a child in a public kindergarten program offered by a school district (provided the child satisfies the district's minimum admission age for its kindergarten programs), the child has "entered school" and it is the duty of the parent or guardian to comply with Pennsylvania's compulsory school attendance laws. Accordingly, we affirm the order of the Commonwealth Court and, consistent with that mandate, the case will be remanded to the trial court for further disposition consistent with this Opinion.

Affirmed.

Justices SAYLOR, EAKIN, BAER, TODD, McCAFFERY and STEVENS join the opinion.

template withdrawals, albeit we recognize that withdrawal from a particular school at a particular time, of course, does not necessarily mean a child has withdrawn from schooling altogether.