# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Township of Washington, Westmoreland County, Pennsylvania, a Second Class Township, | : : : : : |
| Appellant | : : |
| v. | : No. 33 C.D. 2016 : Argued: November 15, 2017 |
| Township of Upper Burrell, Westmoreland County, Pennsylvania, a Second Class Township; and Burrell School District | : : : : |

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ROBERT SIMPSON, Judge
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge[1]


OPINION BY JUDGE WOJCIK    FILED: April 11, 2018


    This case of first impression concerns a uniquely situated commercial property that straddles the boundary between two municipalities, Washington Township and Upper Burrell Township, each of which claims a share of the annual local services tax of $52 paid by each of the 750 employees who work there. In this

---

    [1] This case was argued before an *en banc* panel of the Court that included former Judge Joseph M. Cosgrove. Because Judge Cosgrove's service on the Court ended January 1, 2018, this matter was submitted on briefs to Judge Fizzano Cannon as a member of the panel.

appeal, Washington Township contends that the Court of Common Pleas of Westmoreland County (trial court) erred and abused its discretion in its interpretation of the Local Tax Enabling Act (Act)[2] and its unequal allocation of the local services tax between the townships based on the *specific* "place of employment" of the employees within the facility on the first day of the payroll period. Upon determining that the "place of employment" of an integrated facility must be treated as a whole and that the proper allocation of local services taxes must reflect the division of property between the townships, we reverse and remand.

## I. Background

Washington Township and Upper Burrell Township are contiguous townships of the second class located in Westmoreland County. Welsh Leedsworld is a manufacturing and office/call center located at 400 Hunt Valley Road, New Kensington, Pennsylvania, which employs approximately 750 people. The Welsh Leedsworld facility is located in both Washington and Upper Burrell Townships; the township line runs through the facility building.

Both townships impose a local services tax of $52 per year per employee as authorized by Section 301.1(f)(9) of the Act, 53 P.S. §6924.301.1(f)(9), which provides that the tax "may be levied, assessed and collected only by the political subdivision of the taxpayer's place of employment." "[T]he situs of the tax shall be the place of employment on the first day the person becomes subject to the tax during each payroll period." 53 P.S. §6924.301.1(f)(9)(iv). Although Welsh Leedsworld is located in both townships, prior to this action, all the local services

---

[2] Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §§6924.101-6924.901.

2

tax collected from the Welsh Leedsworld employees were levied, assessed and retained by Upper Burrell Township.

On April 29, 2014, Washington Township initiated this action by filing a complaint for declaratory judgment requesting the trial court to determine the parties' respective rights to claim the local services tax on Welsh Leedsworld employees. Washington Township asserted that it was entitled to half the tax.

The trial court held an evidentiary hearing. The parties presented testimony and documentary evidence, including two exhibits depicting the location of the boundary line between the two townships relating to the Welsh Leedsworld building. Reproduced Record (R.R.) at 244a, 273a. Robert Beckwith, Welsh Leedsworld's facility manager (Manager), testified that Welsh Leedsworld's main entrance, reception area, offices, human resources, conference rooms, elevators, restroom facilities, cafeteria and parking lot are located in Washington Township. The manufacturing facilities and mailroom are located in Upper Burrell Township. Manager further testified that, although its 750 employees move back and forth between the two townships frequently throughout the day, approximately 180 people are primarily employed in Washington Township and 570 are primarily employed in Upper Burrell Township. R.R. at 107a-120a.

In addition, the parties stipulated to the following. Both Washington Township and Upper Burrell Township lawfully impose the local services tax in the amount of $52 per employee. Burrell School District collects $5 per year per person from Upper Burrell Township; Kiski Area School District does not impose the $5 share. Both townships provide emergency service responses to the Welsh Leedsworld facility. Both townships have their own police departments, ambulance companies, fire departments, and both respond, depending upon who gets the call.

3

Although the boundary line between Washington Township and Upper Burrell Township goes through the Welsh Leedsworld building, the exact location is not able to be determined. Upper Burrell Township acknowledged that Welsh Leedsworld employees who work in Washington Township should pay their local services tax to Washington Township, even though heretofore all of the taxes have been paid to Upper Burrell Township. R.R. at 96a-98a.

Washington Township argued that it was entitled to one-half of the local services tax for all employees who work at Welsh Leedsworld because the facility is fully integrated and located within both townships. Upper Burrell Township and the Burrell School District (collectively, Appellees) countered that the tax should be assessed and collected based upon the location within the facility where the employee actually performs the majority of his or her work. Significantly, Appellees conceded that 180 Welsh Leedsworld employees who primarily work in Washington Township should pay their local services tax to Washington Township.

The trial court examined Section 301.1(f)(9)(iv) of the Act in determining the priority of the claim. The trial court held that the local services tax applicable to those persons employed at Welsh Leedsworld facility at 400 Hunt Valley Road "shall be determined based upon their *specific* place of employment, that is, the township and school district within which they are performing the functions of their employment on the first day that that person becomes subject to the tax for that payroll period." Trial Court Opinion, 9/28/15, at 4 (emphasis added). Based on the evidence presented, the trial court determined that "570 persons performed the functions of their employment within that portion of the Welsh Leedsworld facility situated in Upper Burrell Township and the Burrell School District, and 180 persons performed the functions of their employment within that

4

portion of the Welsh Leedsworld facility situated in Washington Township." *Id*. at 4-5. Thus, the trial court held that Welsh Leedsworld must collect and remit taxes attributable to each person accordingly. The trial court treated the claim as arising on April 29, 2014, when Washington Township filed its petition. The trial court directed Appellees to remit all monies assessed and collected from April 29, 2014 to the present for those persons performing the functions of their employment in Washington Township. From this decision, Washington Township appealed.

## II. Issues

In this appeal,[3] Washington Township contends that the trial court acted in contravention of the plain language of the Section 301.1(f)(9) of the Act, 53 P.S. §6924.301.1(f)(9), when it injected the word "specific" in determining "place of employment." Washington Township argues that the trial court then abused its discretion by determining that a Welsh Leedsworld employee's "place of employment" was not simply 400 Hunt Valley Road as a whole, but rather the specific location within the facility where an employee performed the majority of his or her work on the first day that person became subject to the tax for the payroll period.

---

[3] Our review is limited to determining whether the trial court abused its discretion, committed an error of law, or reached a decision not supported by substantial evidence. *Melcher v. Berks County Board of Assessment Appeals*, 93 A.3d 522, 527 (Pa. Cmwlth. 2014). As to questions of law, including questions of statutory interpretation, our standard of review is *de novo*, and our scope of review is plenary. *Newman Development Group of Pottstown, LLC v. Genuardi's Family Markets, Inc.*, 52 A.3d 1233, 1239 (Pa. 2012); *Bowling v. Office of Open Records*, 75 A.3d 453, 466 (Pa. 2011).

## III. Contentions

Washington Township asserts that the trial court misinterpreted the Act by injecting the word "specific" to determine an employee's place of employment for tax purposes. According to Washington Township, the addition of this word results in an overly strict and narrow interpretation of an employee's place of employment not intended by the General Assembly. By adding the word "specific," the trial court violated the tenets of statutory construction. A person's "place of employment" does not need the added qualifier "specific." Washington Township contends that the insertion of the word is particularly troublesome in this case because Welsh Leedsworld is a fully integrated facility. No portion of the building can function as intended without the other portions. The common facilities, such as parking lots, the cafeteria, restrooms, administrative offices, and the like, serve persons working in various sections of the facility. Although an employee may work on the factory floor in Upper Burrell Township, that employee parks, eats, and utilizes other areas of the building located in Washington Township throughout the day as part of his or her employment. There is no "specific" place of employment other than "Welsh Leedsworld," which happens to be located in both townships. Therefore, the trial court's order must be reversed.

Appellees counter that the plain language of the Act is free of ambiguity. It requires that the local services tax be paid to the political subdivision where a person maintains his or her "principal office" or is "principally employed," in other words, where the person spends the majority of his or her workday. Although employees can and do move through the building during the day, the Act determines the priority of which municipality gets the tax. The trial court's use of the word "specific" did not alter the Act. Appellees concede that Welsh Leedsworld

6

employees who spend the majority of their workday in Washington Township should pay the tax to Washington Township. Further, Appellees assert that a similar scenario was squarely addressed in *Octorara Education Association v. West Fallowfield Township*, 7 Pa. D. & C.4th 209 (C.P. Chester 1990). There, the court, applying a former version of the Act, held that the tax was limited to the township in which the taxpayer works. Appellees argue the same analysis applies here. For these reasons, Appellees maintain that the trial court's interpretation of the Act and allocation of the tax should be affirmed.

## IV. Discussion

"[I]n statutory interpretation, our task is to discern the intent of the General Assembly, with the foremost indication being the statute's plain language." *Oliver v. City of Pittsburgh*, 11 A.3d 960, 965 (Pa. 2011). Where the intent of the legislature is clear from the plain meaning of the statute, courts must not pursue statutory construction. 1 Pa. C.S. §1921(b); *Ramich v. Workers' Compensation Appeal Board (Schatz Electric, Inc.)*, 770 A.2d 318, 322 (Pa. 2001). When the words of a statute are free from all ambiguity, we must not disregard the letter of the law under the pretext of pursuing its spirit. 1 Pa. C.S. §1921(b); *Ramich*, 770 A.2d at 322. Only when the language of the statute is ambiguous or not explicit does statutory construction become necessary. 1 Pa. C.S. §1921(c); *Board of Revision of Taxes, City of Philadelphia v. City of Philadelphia*, 4 A.3d 610, 622 (Pa. 2010).

Where the words of a statute are not defined or not explicit, "we resort to considerations other than the plain language to discern legislative intent." *Commonwealth v. Kerstetter*, 94 A.3d 991, 1001 (Pa. 2014). We may consider "the occasion and necessity for the statute; the circumstances under which the statute was

7

enacted; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; the contemporaneous legislative history; and the legislative and administrative interpretations of such statute." *Id.* (quoting *Mercury Trucking, Inc. v. Pennsylvania Public Utility Commission*, 55 A.3d 1056 (Pa. 2012)); *see* 1 Pa. C.S. §1921(c). Furthermore, "the words of a statute shall be construed according to rules of grammar and according to their common and approved usage. Every statute shall be construed, if possible, to give effect to all its provisions." *Kerstetter*, 94 A.3d at 1001 (quoting *Commonwealth v. Zortman*, 23 A.3d 519, 525 (Pa. 2011)).

We are mindful that when statutory construction is necessary, "the General Assembly does not intend *an absurd result or one that is impossible of execution*." *Board of Revision of Taxes*, 4 A.3d at 622 (emphasis added). Moreover, courts "have no authority to add or insert language into a statute" and should not, through interpretation, add a requirement that the General Assembly did not include. *Summit School, Inc. v. Department of Education*, 108 A.3d 192, 199 (Pa. Cmwlth. 2015); *see Vlasic Farms, Inc. v. Pennsylvania Labor Relations Board*, 734 A.2d 487, 490 (Pa. Cmwlth. 1999). With these principles in mind, we examine Section 301.1(f) of the Act.

> Section 301.1(f)(9)(iv), (vi) of the Act provides, in relevant part:
>
> (f) Such local authorities shall not have authority by virtue of this act:
>
> (9) To levy, assess or collect any tax on individuals for the privilege of engaging in an occupation except that such a tax, to be known as *the local services tax, may be levied, assessed and collected only by the political subdivision of the taxpayer's place of employment*. The following apply:
>
> * * *

8

(iv) With respect to a person subject to the local services tax at a combined rate exceeding ten dollars ($10), *the situs of the tax shall be the place of employment on the first day the person becomes subject to the tax during each payroll period. . . . In the event a person is engaged in more than one occupation*, that is, concurrent employment, or *an occupation which requires the person working in more than one political subdivision during a payroll period, the priority of claim to collect the local services tax shall be in the following order: first, the political subdivision in which a person maintains the person's principal office or is principally employed*; second, the political subdivision in which the person resides and works, if the tax is levied by that political subdivision; and third, the political subdivision in which a person is employed and which imposes the tax nearest in miles to the person's home.

* * *

(vi) The local services tax shall be no more than fifty-two dollars ($52) on each person for each calendar year, irrespective of the number of political subdivisions within which a person may be employed. A political subdivision shall provide a taxpayer a receipt of payment upon request by the taxpayer.

53 P.S. §6924.301.1(f)(9)(iv), (vi) (emphasis added).

However, the Act does not define "place of employment." The trial court determined that the "place of employment" was not "400 Hunt Valley Road" as a whole, but rather the location within the facility where the employee performs the majority of his or her work on the first day that person becomes subject to the tax each payroll period. To assign each employee to a particular township, the trial court added the word "specific" to the phrase "place of employment." Trial Court Opinion at 4. The trial court then allocated the local services tax based on where the employee's *specific* place of employment was in relation to the dividing line between

9

Upper Burrell and Washington Township on the first day the employee became subject to the tax for that payroll period. In so doing, the trial court erred.

First, it is a canon of statutory construction that "a court has no power to insert a word into a statute if the legislature has failed to supply it." *Vlasic Farms*, 734 A.2d at 490. The insertion of the word "specific" has resulted in an overly restrictive and narrow interpretation of an employee's "place of employment" to mean an employee's specific work station within an employer's premises, as opposed to the premises as a whole. Although the trial court recognized that "[t]here are occasions during the work day in which persons employed there will go from one township to the other, in order to park their car or leave the premises from the parking lot, to have a meal or a snack in the cafeteria, to use the restroom facilities, or to attend to personnel matters . . . , [it found] the majority of a person's work day is spent within the area of the facility where they are assigned to work." Trial Court Opinion at 3.

In other contexts where "place of employment" is relevant, courts do not give a comparably narrow read to the concept. For example, in workers' compensation, an employer's place of employment includes any area integral to the employer's business. *ICT Group v. Workers' Compensation Appeal Board (Churchray-Woytunick)*, 995 A.2d 927, 931 (Pa. Cmwlth. 2010) (parking lot held to be part of premises because it provides access to the workplace); *see also, e.g., Allegheny Ludlum Corp. v. Workers' Compensation Appeal Board (Hines)*, 913 A.2d 345 (Pa. Cmwlth. 2006) (public sidewalk adjacent to plant gate deemed to be on employer's premises); *Fashion Hosiery Shops v. Workmen's Compensation Appeal Board*, 423 A.2d 792 (Pa. Cmwlth. 1980) (entranceway to lessor's building that was a means of ingress and egress to employer's shop).

10

Moreover, such a narrow reading of "place of employment" creates an exacting standard that is extraordinarily burdensome to apply. Under the trial court's construction, Welsh Leedsworld personnel office will have to pinpoint an employee's specific location within the building, right down to a person's desk or work station, at the beginning of every payroll period. This exercise may be impossible in certain areas of the building where the boundary line agreed to by the parties appears to bisect employee work stations. *See* R.R. at 244a. The General Assembly could not have intended such an exacting and problematic standard. *See Board of Revision of Taxes*, 4 A.3d at 622.

In defense of the trial court's interpretation, Appellees rely on *Octorara*. Therein, the Chester County Court of Common Pleas confronted a similar issue. The school district had four school buildings, three of which were in West Fallowfield Township and one that was in Highland Township. The school district's administrative offices were located in West Fallowfield Township, while the elementary school building where the teachers taught was located in Highland Township. *Octorara*, 7 Pa. D. & C.4th at 210. West Fallowfield Township attempted to impose its "occupational privilege tax"[4] on the teachers who taught in the Highland Township building on the basis that they were "administratively governed" out of the main office in West Fallowfield Township. *Id.* at 211. The teachers challenged the tax on the basis that their place of employment was in Highland Township, where they taught school, not West Fallowfield Township. The *Octorara* court, applying the former version of the Act,[5] held that the tax was limited

---

[4] Now known as the "local services tax." 53 P.S. §6924.301(f)(9).

[5] The former provision of the Act similarly provided: "To levy, assess or collect any tax on individuals for the privilege of engaging in an occupation (occupational privilege tax) except that

11

to the township in which the taxpayer works. *Id.* at 212. The *Octorara* court reasoned, "Section 6902(9) does not state that the situs of the tax is the location where the paychecks originate, but rather where the taxpayer is employed, i.e. *where he or she works*." *Id.* (emphasis added). Thus, the court held that the teachers who *worked* in the Highland Township building were not subject to the West Fallowfield Township tax. *Id.*

Although we are not bound by the *Octorara* decision,[6] it is readily distinguishable. In *Octorara*, the teachers and the administrative staff performed separate functions in separate buildings located in different townships. The school building where the teachers worked each day was located in a different township from the building where the administrative staff worked. The teachers did not work in both locations. According to the record, the teachers had few contacts with the administrative offices.

By contrast, the Welsh Leedsworld facility involves a single building that houses fully-integrated administrative and manufacturing divisions, where, on any given day, the employees move freely throughout the building and use space and resources in both townships. R.R. at 116a-17a. Therefore, *Octorara* is not persuasive.

Appellees also rely on the priority of claim language in Section 301.1(f)(9)(iv) to support the trial court's allocation of taxes based on where

---

such a tax may be levied, assessed and collected only by the political subdivision of the taxpayer's place of employment. . . . The situs of such tax shall be the place of employment . . . ." *Former* Section 2(9) of the Act, 53 P.S. §6902(9).

[6] "[D]ecisions of the Court of Common Pleas are not binding precedent" but "they may be considered for their persuasive authority." *Hirsch v. EPL Technologies, Inc.*, 910 A.2d 84, 89 n.6 (Pa. Super. 2006), *appeal denied*, 920 A.2d 833 (Pa. 2007) (citation omitted).

employees are "principally employed." Such reliance is misplaced.[7] The priority of claim language applies to persons "engaged in more than one occupation" or "an occupation which requires the person working in more than one political subdivision during a payroll period." 53 P.S. §6924.301.1(f)(9)(iv). Where a person works for more than one employer or where an employer has more than one office, we then examine where the person maintains a "principal office" or is "principally employed." *Id.* (emphasis added). The point of the priority scheme is to ensure that a taxpayer, who is engaged in more than one occupation or an occupation which requires him or her to work in more than one political subdivision will not be forced to pay the local services tax to more than a single municipality. It is intended to protect traveling salespeople, union hall workers, or persons working for employers with multiple locations.

However, Welsh Leedsworld's employees are not working for more than one employer or in more than one office location during a payroll period. Rather, they are working for a single employer at a single location, which location happens to span two political subdivisions. What causes Welsh Leedsworld employees to work in more than one political subdivision is not the occupation itself, but the situs of the place of employment. Consequently, we do not prioritize claims based on "principal office" or where a person is "principally employed." Rather, in the situation of a fully-integrated facility such as Welsh Leedsworld, the analysis begins and ends with the "place of employment."

Applying the foregoing analysis here, we conclude that the place of employment for Welsh Leedsworld is a single location -- 400 Hunt Valley Road. The place of employment must be treated as a whole, not a collection of individual

---

[7] We note that the trial court properly determined that Appellees' reliance on this provision was misplaced. *See* Trial Court Opinion at 4.

13

workstations within the facility. Such an interpretation is logical where, as here, the place of employment is an integrated facility in which each part of the facility supports and correspondingly depends on the other parts and employees move freely throughout the building and use space and resources in both townships. R.R. at 116a-17a. Considering the interdependence of all portions of the facility, employees work in *both* townships, not just the specific location where the employee is standing or sitting on the first day of the payroll period. Consequently, the "place of employment" encompasses the building, including cafeterias and conference rooms, the parking areas, and the land used in connection therewith. Treating the whole facility as the "place of employment" also comports with the purpose of the local services tax, which is to defray the cost of providing emergency and other municipal services. Indeed, the parties stipulated that both townships provide such services to Welsh Leedsworld.

The question remains as to what is the appropriate standard for tax allocation under the Act for integrated facilities that span more than one political subdivision. In other words, how should the local services tax be shared between them?

Washington Township argues that the taxes should be shared equally between the taxing authorities. Washington Township explains that, because the tax itself has been designated by each township for the provision of emergency services, road construction and maintenance, reduction of real estate taxes and property relief through Homestead and Farmstead exclusions, those common purposes should require the equal sharing of the tax revenues.

However, an equal division allocation has no relation to the actual "place of employment." Although the place of employment is located in two

14

townships, the dividing line between Washington and Upper Burrell Township is not equal. *See* R.R. at 244a, 247a. Because the place of employment encompasses the whole facility, not just the building, the proper tax allocation must relate to the division between the townships.

The Welsh Leedsworld parcel is divided for real estate tax purposes. The dividing line is clearly shown on the recorded subdivision plan. R.R. at 99a; Original Record (O.R.), Trial Exhibits, Defendant's Exhibit A. Moreover, "[t]he specific boundary line between the townships herein has been established in previous litigation regarding real estate taxes, by the consent of the townships. *In re: Welsh Leedsworld PA, L.L.C.*, appeal filed by Township of Washington, Westmoreland County, Pennsylvania, tax map number 62-09-00-0-060 at No. 8789 of 2007." Trial Court Opinion at 2. According to the order, 28 percent of the property of Welsh Leedsworld is located in Washington Township and 72 percent is located in Upper Burrell Township. O.R., Trial Exhibits, Defendant's Exhibit G; *see* R.R. at 88a-89a.

Applying this formula here, Washington Township is entitled to taxes levied for 28 percent of the Welsh Leedsworld employees and Upper Burrell Township is entitled to taxes levied for 72 percent of the Welsh Leedsworld employees.

**V. Conclusion**

In sum, where, as here, an integrated facility straddles two (or more) townships, the proper allocation of local services taxes must reflect the division of property between (or among) them. Therefore, the proper assessment is based on the percentage of the property within a particular township. Such an allocation along

15

boundary lines is not only consistent with the intent and purpose of the Act, but is a manageable standard that is inherently fair to both townships, which provide services to Welsh Leedsworld.

For these reasons, we reverse the order of the trial court and remand for an allocation of local services taxes between Washington Township and Upper Burrell Township based on the foregoing standard.


_____
MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Township of Washington, : 
Westmoreland County, : 
Pennsylvania, a Second Class : 
Township, : 
 : 
                 Appellant : 
 : 
                 v. : No. 33 C.D. 2016
 : 
Township of Upper Burrell, : 
Westmoreland County, Pennsylvania, : 
a Second Class Township; and : 
Burrell School District : 

## O R D E R

AND NOW, this 11ᵗʰ day of April, 2018, the order of the Court of Common Pleas of Westmoreland County (trial court), dated September 28, 2015, is REVERSED and this matter is REMANDED to the trial court for an allocation of local services taxes between Washington Township and Upper Burrell Township in accordance with the foregoing opinion.

Jurisdiction relinquished.

_____
MICHAEL H. WOJCIK, Judge